MARTIN R. NEAL *v.* POTOMAC EDISON COMPANY
ET AL.

[No. 716, September Term, 1980.]

*Decided April 8, 1981.*

*Note: *Certiorari* denied, Court of Appeals of Maryland, June 29, 1981.

The cause was argued before MOORE, LISS and WEANT, JJ.

*Donald E. Beachley* for appellant.

*Gregory C. Bannon* for appellee Local 771 of the International Brotherhood of Electrical Workers. *Conrad Varner* for appellee Potomac Edison Company.

MOORE, J., delivered the opinion of the Court.

The question for decision is whether the trial court erred in granting motions for summary judgment in favor of the defendant-appellees, Potomac Edison Company ("Edison") (sometimes referred to below as "Employer") and Local Union 771 of the International Brotherhood of Electrical Workers ("Union") against the plaintiff-appellant, an employee of Edison and member of said Union. The action below was precipitated by appellant's termination by Edison because of his "sickness and absenteeism" and the Union's subsequent refusal to go forward with arbitration on the issue of appellant's termination. We find that triable issues are present and, therefore, reverse the motions for summary judgment and remand for trial.

I

Appellant, Martin Neal, was employed by the appellee, Potomac Edison, from August 1969 to March 1978 as a bulldozer and crane operator at the R. Paul Smith Power Station in Williamsport, Maryland. As an employee at that plant, appellant was a member of the appellee Union. On March 6, 1978, his employment was terminated by Edison as a result of "excessive loss of time due to sickness and absenteeism." [1] Suffice it to say, Edison, on appeal, presents

---

1. Depositions reveal that Edison considered the entire work record of the appellant in making its decision. However, in his brief, appellant emphasizes the following event as a prelude to his termination: On March 3, 1978, while home on a prearranged vacation day, Neal called the plant superintendent and requested that it be treated as a sick leave day instead because Neal claimed that he was sick that day. He was told, at that time,

a picture of appellant's work record somewhat bleaker than it really was while the appellant, leaning to the other extreme, finds little, if any, fault on his own part.[2]

Pursuant to the collective bargaining agreement entered into between Edison and the Union, effective at all times applicable herein, appellant filed a grievance under Article VII with Edison concerning his termination and, with the assistance of the Union, proceeded without success through the third step of the grievance procedure.[3] Thereafter, he requested that the Union submit his claim to arbitration

---

not to report to work until he heard from Potomac Edison. The notification of termination of March 6, 1978 followed.

**2.** Robert Bowen, Personnel Director of Edison, testified in his deposition that prior instances of alleged misconduct by appellant included: his failure to work overtime in an emergency on several occasions which resulted in a total of five and one-half days of suspension, for not having a sufficient reason for failing to appear at work on January 23, 1978, and for leaving his job on other occasions before it was completed.

Appellant, however, testified in his deposition that he was subsequently cleared of the charge of excessive sickness and absenteeism at a meeting on March 28, 1978. Apparently, this fact was not refuted. With respect to the other allegations, appellant stated that a meeting to discuss his failure to work overtime was never held. In any event, he claimed that no "emergency" existed at the plant on those days when he was asked to work overtime. Finally, his excuse for his absence on January 23, 1978 was a sickness certificate signed by his doctor's receptionist, but not the doctor.

**3.** The first three steps in the grievance procedure as set forth in the collective bargaining agreement are as follows:

"The procedure for settling a grievance, dispute, question, or controversy arising under this agreement (unless any step thereof is waived, or changed by mutual consent) shall be as follows:

A. Between the aggrieved employee and his immediate supervisor. (Employee if he so desires may be accompanied by a member or members of the Grievance Committee to act in his behalf.) In case the dispute is between the Union and the Company, this step may be omitted and the procedure will begin with the next following step.

B. Between a member or members of the Committee and the Station Superintendent.

C. Between an International Representative of the Brotherhood and the Director of Employee Relations of the Company, or his authorized representative."

Although Neal testified that he skipped the first step, the parties do not contest this point nor do they question whether the other two steps were precisely followed.

pursuant to the fourth step in the grievance process.[4] The Union membership, however, voted against submitting appellant's claim to arbitration.

Appellant thereafter filed a declaration, subsequently amended, against Edison and the Union seeking compensatory damages totalling $45,000. In the amended declaration, appellant claimed that Edison wrongfully terminated his employment by considering his past work record at Edison. Furthermore, he alleged that both Edison and the Union breached the provisions of the collective bargaining agreement by refusing to refer his grievance to arbitration and that the Union's refusal to go forward with

---

4. With respect to arbitration, the collective bargaining agreement provides:

"46. All of the foregoing steps having been taken in the order named without a satisfactory adjustment of the grievance, then, there *shall* be created a Board of Arbitration to be composed of one representative of the Union, one representative of the Company and a third impartial member who will act as Chairman, to be designated by mutual consent of the other two members. In the event the members of the Board of Arbitration fail to select a third member within one week, they shall jointly request the Director of the Federal Mediation and Conciliation Service to submit a list of five (5) arbitrators from whom one shall be selected by the two members of the Board. The Board of Arbitration shall meet at the place chosen by their mutual consent and shall render a decision on the merits of the case. The Board of Arbitration shall have no authority to add to or subtract from or modify any of the terms of this agreement or any agreement supplemental hereto. The written decision of a majority of the Board shall be final and binding upon the Company, and the Brotherhood, and the employees in the Unit, for the period of this agreement or any extension thereof. *Each party shall bear the expense of preparing and presenting its own case and the expense of its own arbitrator and shall pay one-half of the expense of the third arbitrator.* This provision shall not be construed to prevent further conferences between the parties hereto for the purpose of settling the dispute at any time before the decision of the Board of Arbitration." (Emphasis added.)

The literal language appears to create a mandatory obligation for the Union and the employer to submit all grievances to arbitration when the preceding steps do not result in a satisfactory adjustment. Appellant, however, did not pursue this point. We observe that Robert Bowen, Personnel Director of Edison, testified at his deposition that he could not recall any grievance that was submitted to arbitration by Local 771 since 1970. Despite the apparent mandatory language of this section, a screening process by the Union which ferrets out and eliminates frivolous grievances, is proper. See Vaca v. Sipes, 386 U.S. at 191-93.

arbitration was discriminatory, arbitrary and in bad faith due largely to the Union's alleged announcement to its members that it would cost $2,000 to take appellant's grievance to arbitration — a figure which appellant characterized as a "grossly and recklessly exaggerated estimate." Edison demurred and moved for summary judgment to the amended declaration. The Union also demurred.

The trial court, in its Memorandum Opinion, first addressed the defendant-appellees' demurrers and concluded that Neal alleged sufficient facts to state a cause of action against both the Union and the employer. The demurrers, therefore, were overruled and no question is raised on appeal concerning them. However, the court went on to decide Edison's motion for summary judgment which was granted as to both Edison and the Union. As to the employer, the court ruled that the Union properly exercised its discretion in not referring Neal's grievance to arbitration. It was unnecessary, the court concluded, to reach the issue of Edison's discharge of Neal under the rule set forth in *Vaca v. Sipes,* 386 U.S. 171, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967), *infra,* which held that a wrongfully discharged employee may bring an action against his employer *only* if he can establish that the Union breached its duty of fair representation.

On appeal, Neal contends that the lower court erred in granting summary judgment and that there was ample evidence from which a jury could have decided that Edison wrongfully discharged him. We agree with the appellant that the court erred in granting summary judgment for the appellees.

II

The parties are in agreement as to the principles of law herein applicable. We begin, therefore, with the rule that before a wrongfully discharged employee may bring an action against his employer, he must *first* establish that the Union breached its duty to him of fair representation. *Vaca v. Sipes,* 386 U.S. 171, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967).

This breach is established by showing that the Union processed the employee's grievance in a manner which was arbitrary, discriminatory or in bad faith. *Id.* 386 U.S. at 190, 87 S. Ct. at 916, 17 L. Ed. 2d at 857. In *Griffin v. International Union of United Auto Workers,* 469 F.2d 181, 183 (4th Cir. 1972), the Court delineated this three-pronged standard:

> "A union must conform its behavior to each of these three separate standards. First, it must treat all factions and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its individual members must be exercised in complete good faith and honesty. Finally, the union must avoid arbitrary conduct. Each of these requirements represents a distinct and separate obligation, the breach of which may constitute the basis for civil action."

In *Griffin, supra,* Judge Sobeloff went on to explain the holding of *Vaca:*

> "That case [*Vaca v. Sipes*] declared that a union is accorded considerable discretion in the handling and settling of grievances. The individual employee has no absolute right to insist that his grievance be pressed through any particular stage of the contractual grievance procedure. *A union may screen grievances and press only those that it concludes will justify the expense and time involved in terms of benefiting the membership at large. Encina v. Tony Lama Boot Co.,* 448 F.2d 1264 (5 Cir. 1971). *In the Vaca decision itself, the Court held that a union did not necessarily breach its duty of fair representation when it refused to take a member's grievance to arbitration."* (Emphasis added.)

The *Griffin* Court also emphasized the necessity for avoidance of arbitrary behavior in the handling of a grievance based upon a discharge:

"While negligence in handling grievances has not been identified as breaching the union's duty of fair representation, *Bazarte v. United Transportation Union,* 429 F.2d 868, 872 (3 Cir. 1970), the courts have adopted the position that a union may not arbitrarily ignore a meritorious grievance or handle it in a perfunctory manner. (Citations omitted.) Without any hostile motive of discrimination and in complete good faith, a union may nevertheless pursue a course of action or inaction that is so unreasonable and arbitrary as to constitute a violation of the duty of fair representation. A union may refuse to process a grievance or handle the grievance in a particular manner for a multitude of reasons, but it may not do so without reason, merely at the whim of someone exercising union authority. A union must especially avoid capricious and arbitrary behavior in the handling of a grievance based on a discharge — the industrial equivalent of capital punishment."

After its decision in *Vaca v. Sipes, supra,* the Supreme Court again had occasion to address the nature of a Union's duty of fair representation:

"The union's breach of duty relieves the employee of an express or implied requirement that disputes be settled through contractual grievance procedures; *if it seriously undermines the integrity of the arbitral process* the union's breach also removes the bar of the finality provisions of the contract." (Emphasis added.)

*Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567, 96 S. Ct. 1048, 1058, 47 L. Ed. 2d 231, 243 (1976), *cited in Miller v. Gateway Transportation Co.,* 616 F.2d 272, 277 (7th Cir. 1980).

The Maryland Court of Appeals has also spoken with respect to the Union's duty of fair representation:

"[T]he Union is to consider carefully and fairly the

alleged grievances of its members, that it is likewise to exercise its judgment and discretion fairly on behalf of its individual members in determining upon what terms it believes any grievances of theirs should be adjusted and whether such grievances should be carried to arbitration, if negotiations for settlement or adjustment fail."

*Jenkins v. Wm. Schluderberg-T.J. Kurdle Co.,* 217 Md. 556, 564, 144 A.2d 88, 93 (1958). *See Ostrofsky v. United Steelworkers of America,* 171 F. Supp. 782, 793 (1959), *aff'd,* 273 F.2d 614 (4th Cir. 1960).

In the instant case, appellant's basic contention is that the Union breached its duty of fair representation when its President informed the Union membership (at the meeting when the members were to vote on the issue of whether to submit appellant's claim to arbitration) that the cost of submitting the grievance to arbitration would be $2,000. Neal argues that this figure was a "grossly and recklessly exaggerated estimate" and resulted in the members casting a 14-12 vote against arbitration of his grievance. The Union contends that even if the appellant could prove that the $2,000 figure was mentioned at the meeting, "there would be no evidence indicating that Local 771 violated its duty of fair representation."

Some additional background material is necessary for an understanding of Neal's grievance against the Union: In May 1978, about two months after Neal's termination, the Executive Board of the Union heard appellant's case in his presence. It decided that the decision of whether to present appellant's dispute to an arbitration panel was to be voted upon by the Union membership. It was at the membership meeting, where the voting occurred, that appellant claims the Union failed adequately to represent him. There is disagreement as to what was said at this meeting. Appellant was not present. He testified in his deposition, however, that someone at the meeting (whom he specifically named) told him that the President of the Union, George Sword, informed the Union members that it would cost the Union $2,000 to submit appellant's claim to arbitration. Fur-

thermore, appellant testified that the same figure was mentioned by Sword in his presence, and in the presence of others, on numerous occasions. Appellant also testified that Sword told him that "the Union would not waste the money to take it to arbitration." These assertions were not disputed nor, indeed, mentioned in Sword's deposition, taken some two months after Neal's.

With respect to the cost involved if and when the Union refers a grievance to arbitration, the only relevant evidence in the record is found in the deposition of Robert Bowen, the Personnel Director of Potomac Edison. He testified as follows:

BY MR. MACKLEY [Attorney for Neal]:

"Q.   The expense for that [outside] arbitrator that you and the president [of the Local Union] select out of this list, would it be correct to say that in those other arbitration cases involving the other union that you and the union split equally the cost of that arbitrator?

(OBJECTED TO BY MR. VARNER) [Attorney for Edison]

A.   That would be right.

Q.   During the seven (7) years that you've been Personnel Director involved in these arbitration cases you've spoken of, can you give me an estimate about what they cost for the outside arbitrator . . . normally runs which you and the union divide?

(OBJECTED TO BY MR. VARNER)

A.   Approximately Nine Hundred ($900.00) Dollars, somewhere in that area.

Q.   That would be the total cost before splitting?

A.   That's right.

Q.   Would there have been some that run less than Nine Hundred (900)?

(OBJECTED TO BY MR. VARNER)

A. I'd have to go back and check the records, but I think that would be a fair statement.

Q. What, according to your recollection, is the approximate average cost that you pay for such an outside arbitrator for a one (1) day hearing?

BY ATTORNEY VARNER:

Objection. Answer if you know.

A. The cost I've given you indicates the costs for a one (1) day hearing plus the expenses."

Thus, the uncontradicted testimony of Bowen establishes that the Union's cost in obtaining an *outside* arbitrator is one-half of $900 or $450 "plus the expenses."

We observe, however, that there is no testimony which addresses either the nature or amount of any *other* expenses incurred by the Union when it submits a grievance to arbitration.[5] Whether such expenses may arise in other arbitration cases is also unclear although provision for their payment is made in paragraph 46 of the collective bargaining agreement:

"Each party shall bear the expense of preparing and presenting its own case and the expense of its own arbitrator and shall pay one-half of the expense of the third arbitrator."

Based upon the meager record before it, the trial court granted the Union's motion for summary judgment and said:

"The testimony of Robert W. Bowen, establishes the cost of only one day of arbitration to be $900.00 exclusive of attorneys' fees. The uncontroverted evidence, when examined in connection with the union officers' statements as to the possible cost of arbitration, clearly establishes the union's conduct to be within the 'wide range of reasonableness' prescribed by Ostrofsky v. United Steelworkers of

---

5. Conspicuously absent is testimony concerning the cost of a party's *own* arbitrator.

America, supra. There are no facts to sustain an allegation of gross or reckless action by the union. It exercised its discretion."

We disagree. The only uncontroverted evidence was that of Bowen who testified that the Union's cost for an outside arbitrator for a one-day hearing was one-half of $900 or $450, plus the expenses. If such constitutes the only cost incurred by the Union in submitting appellant's claim to arbitration, it could not be held, as a matter of law, that the Union's refusal to submit appellant's claim was not "arbitrary, discriminatory, or in bad faith." In any event, the trial court was incorrect in finding that the cost of one day of arbitration, exclusive of attorneys' fees, is $900. The $900 figure given by Bowen pertained only to the cost of an outside arbitrator. Furthermore, it is unclear whether Bowen's statement: "[t]he cost I've given you indicates the costs for a one (1) day hearing plus the expenses," includes or excludes attorneys' fees. Indeed, the record does not disclose whether attorneys' fees would even be incurred by the Union or the nature of any other "expenses [in] preparing and presenting its own case." Finally, the record does not disclose the anticipated duration of the arbitration hearing.

We hold that a genuine issue of fact was presented as to whether the Union's conduct was "discriminatory, arbitrary, or done in bad faith," by its announcement that the cost of referring appellant's claim to arbitration was $2,000. Summary judgment should have been denied. Maryland Rule 610. Whether appellant was properly terminated by Edison is an issue which may be reached at trial.

*Judgment reversed; case remanded for trial; costs to be paid equally by the appellees.*