473 A.2d 956

**Richard BYRNE**

v.

**MASS TRANSIT ADMINISTRATION et al.**

**No. 916, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

April 12, 1984.

502

Robert G. Skeen, with whom were Harry Goldman, Jr., Baltimore, and Goldman & Skeen, P.A., on brief, for appellant.

Kenneth D. Pack, Baltimore, with whom were Joseph S. Kaufman and Melnicove, Kaufman, Weiner & Smouse, P.A., Baltimore, on brief for appellee, Mass Transit Admin.

Patty L. Parsons, Baltimore, with whom were Edelman & Rubenstein, P.A., Baltimore, on brief for appellee, Amalgamated Transit Workers Union, Div. 1300, AFL–CIO.

Argued before GILBERT, C.J., WILNER, and GARRITY, JJ.

GILBERT, Chief Judge.

This appeal concerns a discharged employee, the employer that fired him, the union that represented him, and the ruling of the trial court that dismissed the employee's subsequent suit against both employer and union.

We shall uphold the trial court's ruling in part and reverse in part, remanding the matter for possible further proceedings.

Before we begin our discussion of the law applicable to the matter *sub judice,* we shall recount the facts out of which this litigation arose.

During a surveillance of the Main Shops of the Mass Transit Administration (MTA), that agency's police officers observed a person removing a box from the trunk of a MTA vehicle and placing it in a privately owned automobile. Viewing what they obviously suspected was a theft in progress, the officers confronted the suspect and learned that he was Richard Byrne, an employee of MTA. Byrne denied involvement in the theft or knowledge of how the box got into his car. Examination of the box disclosed two batteries belonging to the MTA. Byrne was placed under arrest for theft of goods valued at less than $300.

When questioned two days later by Assistant Maintenance Superintendent Smith, Byrne responded that he had been road testing the MTA car because of its brake problems when he was approached by two men who offered to sell him two batteries. Company records revealed, however, that the MTA vehicle that Byrne had been testing was serviced for heater, and not brake, problems. Byrne said that after he

purchased the two batteries, he transferred them to his personal automobile.

In conformance with the collective bargaining agreement between the MTA and the Amalgamated Transit Workers Union, Division 1300, AFL–CIO (the Union), Byrne and the Union, of which he was a member, were served with a formal disciplinary notice that contemplated Byrne's dismissal by MTA. Following a disciplinary hearing, Byrne was discharged. The Union, on behalf of Byrne, unavailingly appealed the discharge. Continuing in its defense of Byrne, the Union then filed a demand for arbitration. During the period between the initial determination of discharge and the appeal hearing, Byrne was judicially tried for the theft. The district court in Baltimore City dismissed the charges against Byrne on the basis of insufficient probable cause to effect the arrest.[1]

At the arbitration hearing, MTA presented evidence, including testimony, concerning Byrne's actions leading to his discharge. The Union on behalf of Byrne raised two defenses, *viz:* (1) the MTA could not prove that any batteries were missing from its "stores," and, therefore, there was insufficient evidence of theft to justify Byrne's discharge; and (2) in the absence of a criminal conviction, the discharge should not be upheld. The arbitrator, however, was patently unpersuaded by the Union's argument, and he upheld the discharge.

Approximately one month later, Byrne filed identical suits in the Circuit Court for Baltimore City and in the United State's District Court for Maryland. The petitions asserting "jurisdiction pursuant to the provisions of § 301 of the Labor Management Relations Act of 1947 [LMRA], 29 U.S.C. 185, *et seq.,*" alleged that the discharge by the MTA was improper and that the Union had breached its duty of fair representation toward Byrne. The Union demurred and the

---

1. The correctness *vel non* of the district court's ruling is not before us, and we express no opinion thereon.

MTA moved for summary judgment and also raised a preliminary objection to each petition. The United States District Court (Ramsey, J.) granted the motions because of a lack of federal subject matter jurisdiction.

The scene then shifted to the Circuit Court for Baltimore City where a hearing judge granted MTA's motions and entered summary judgment in its behalf. The Union's demurrer was sustained without leave to amend. Byrne now challenges those rulings.

■■■ There are at least three reasons why MTA's motion raising preliminary objection or, alternatively, summary judgment was properly granted by the circuit court. First, LMRA, 29 U.S.C. § 185(a) provides:

"Suits for violation of contracts between an *employer* and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, *may be brought in any district court of the United States* having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." (Emphasis supplied.)

Manifestly, Byrne's suit was between him, his employer and his Union. Such an action simply does not fit within the pattern shaped by the statute. The Congress did not intend, in enacting § 185, to permit employees to maintain an action against the employer whenever the Union allegedly failed to represent the employee in good faith. *O'Sullivan v. Getty Oil Company,* 296 F.Supp. 272 (D.Mass.1969); *Miller v. Spector Freight Systems, Inc.,* 366 F.2d 92 (1st Cir.1966); *cf. Haynes v. United States Pipe & Foundry Company,* 362 F.2d 414 (5th Cir.1966).

Second, § 152(2) of the LMRA defines an employer as "any person acting as an agent of an employer, directly or indirectly, but *shall not include* the United States or any wholly owned Government corporation, . . . *or any State or political subdivision* thereof . . . ." (Emphasis supplied.)

Indubitably, the MTA is an agency and instrumentality of the State of Maryland. *See* Md.Transp.Code Ann. § 7–101 *et seq.*

Since § 152(2) of the LMRA specifically excludes the State, and implicitly its agencies, from the purview of the Act, an action against MTA under claim of the authority of the LMRA will not lie. *See Jackson Transit Authority v. Local Division 1285,* 457 U.S. 15, 102 S.Ct. 2202, 72 L.Ed.2d 639 (1982).

Third, the MTA is the only Maryland State agency that is by statute authorized to enter into collective bargaining agreements with its employees. Transp. Art. § 7–601. The federal Urban Mass Transportation Act of 1964, 49 U.S.C. § 1609, commands that a State or local government preserve collective bargaining rights of transit workers as a condition precedent to the receiving of federal financial assistance. Cognizant of the fiat of § 1609 of the Urban Mass Transportation Act of 1964 (UMTA), the Maryland legislature in Transp. Art. § 7–605 specifically provided that the "rights, benefits and other employee protective conditions and remedies of . . . [§ 1609] of the federal . . . [UMTA]" apply to "transit facilities owned or controlled by" the MTA.

Transp. Art. § 7–602 provides, *inter alia,* that "labor disputes" include "grievances that arise." § 7–602(a)(3). In grievances, the decision of the arbitrator "is final and binding on all disputed matters." § 7–602(d). The statute, as the Union points out in its brief, "is plainly worded and makes no exception in its finality mandate . . . ." Consequently, when the arbitrator upheld MTA's firing of Byrne, the matter under the LMRA and UMTA was at an end.

Thus, the circuit court correctly granted MTA's motion raising preliminary objection and entered summary judgment in favor of MTA.

What we have said with respect to MTA does not apply to the Union.

█ Byrne grounded his action in "§ 301 of the Labor Management Relations Act of 1947, 29 U.S.C. 185 *et seq.*" As we have previously seen, that section precludes actions by employees against employers when there is a binding collective bargaining agreement in which the Union is to represent its members in labor disputes. Section 185 of the LMRA does not, however, preclude suits by a union member against the union because of an alleged failure of the union's duty of fair representation, nor does it expressly permit such claims.

The Supreme Court in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), held that State courts have jurisdiction to entertain a union member's action against the officers and representatives of the union based on the member's claim that the union had, without good cause or reason, refused to take to arbitration the member's grievance against his employer.

█ The duty of fair representation does not arise under the LMRA, but rather as a private cause of action under State law for breach of contract. *Dimeco v. Fisher*, 185 F.Supp. 213 (D.C.N.J.1960); *Plant v. Catalytic Construction Company*, 287 A.2d 682 (Del.Super.1972); *Corso v. Local Union No. 153 of International Union, United Auto, Aerospace and Agricultural Implement Workers of America, AFL–CIO*, 123 N.J.Super. 121, 301 A.2d 773 (1973); *DiMola v. Local Union 808, Intern. Broth. of Teamsters, Chauffers and Warehousemen of America*, 408 N.Y.S.2d 731, 95 Misc.2d 910 (1978). Therefore, Byrne does have a right to assert an action in a State court despite the federal court's lack of jurisdiction.

█ It is one thing to bring the suit; it is another to prevail. *Vaca* makes clear that Byrne will have to prove that the Union breached its duty of fair representation. The mere fact that the arbitration proceeding was decided adversely to Byrne does not lead to the conclusion that the Union failed to represent him fairly. There are cases, of which this might well be one, where no union representative,

lawyer, magician or combination thereof could convince an arbitrator that the employer's action was improper.

■ Byrne shoulders the burden of proving that the Union acted in bad faith. Unions are not insurers of their member's job security. While the Union may be expected to provide service and assistance to its members, it cannot be expected to guarantee that, irrespective of the employee's misconduct, the employee will retain his job.

Aside from the question of the bringing of the suit is the knotty problem of determining "what remedies may be available against the Union if a breach of duty is proven." *Vaca v. Sipes*, 386 U.S. at 188, 87 S.Ct. at 916. We need not and do not here decide that issue.

Inasmuch as Byrne had a right to bring suit against the Union, although not under the statutory authority he asserted, the circuit court should not have precluded amendment of the declaration, but should have allowed Byrne to amend so as to place his claim under authority of State law. We so opine because the Court of Appeals in *Crowe v. Houseworth,* 272 Md. 481, 325 A.2d 592 (1974), made clear that "amendments [to pleadings] should be freely allowed...." Subsequently, in *Staub v. Staub,* 31 Md.App. 478, 482, 356 A.2d 609 (1976), we said:

> "Irrespective of what the procedural law may be in other jurisdictions, Maryland has adopted a liberal view relative to amendment. It is manifest that the Maryland rule is designed to place a case on trial on its merits, thus fostering justice rather than impeding it by adhering to antiquated technicalities." (Footnote omitted.)

When we apply the *Houseworth-Staub* rationale to the case at bar, we are led to the conclusion that the circuit court erred in sustaining the demurrer without leave to amend. Byrne should be offered the opportunity to amend his declaration. Amendment, however, does not guarantee success, because, as we have previously said, the burden Byrne carries is tremendous.

**510**

JUDGMENT AFFIRMED AS TO THE MASS TRANSIT ADMINISTRATION.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART AS TO AMALGAMATED TRANSIT UNION DIVISION 1300 AFL–CIO.

THREE FIFTHS OF THE COSTS TO BE PAID BY BYRNE AND TWO–FIFTHS TO BE PAID BY AMALGAMATED.