884 A.2d 724

**Ramon STANLEY**

v.

**AMERICAN FEDERATION OF STATE AND MUNICIPAL
EMPLOYEES LOCAL NO. 553, et al.**

**No. 1313, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Oct. 6, 2005.

**4**

Stephen C. Wilkinson, Cumberland, for appellant.

Linda McKeegan (Joel A. Smith, Kahn, Smith & Collins, PA, on brief), Baltimore, H. Jack Price, Jr., Cumberland, for appellee.

Panel DEBORAH S. EYLER, BARBERA, and WILLIAM W. WENNER, (retired, specially assigned), JJ.

BARBERA, J.

This appeal has its genesis in a union's refusal to arbitrate a member's grievance with his employer. In 2000, Ramon Stanley, appellant, was terminated from his employment with the City of Cumberland after a urine sample he submitted to the Allegany County Health Department (the "Health Department") tested positive for the presence of marijuana. That result was appellant's second positive test result in approximately one year.

Appellant, a member of the American Federation of State & Municipal Employees Local No. 553 (the "Union"), sought the Union's assistance in pursuing a grievance on his behalf against the City of Cumberland. The Union's members initially voted to arbitrate the decision to terminate appellant's employment, but later voted not to proceed on appellant's behalf. The Union notified appellant that he could proceed to arbitration on his own and without Union representation. When appellant attempted to enter into arbitration with the City of Cumberland, however, it refused to arbitrate.

Appellant thereafter filed suit in the Circuit Court for Allegany County against the Mayor and the City Council of Cumberland (the "City") and the Union, all appellees herein. Appellant alleged in the complaint that the Union breached its duty of fair representation, and that he was wrongfully terminated from his employment with the City. Appellant also asked the court to issue an order compelling the City to arbitrate his grievance.

After the court entered summary judgment in favor of appellees, appellant noted this timely appeal. For the reasons discussed below, we hold that there are triable issues concerning appellant's claim for breach of the Union's duty of fair representation. We therefore reverse the court's grant of summary judgment in favor of the Union. We also reverse the court's grant of summary judgment in favor of the City on

the count alleging wrongful termination. We affirm the court's summary judgment ruling in favor of the City on the counts requesting an order compelling arbitration and an order that the grievance be decided in appellant's favor.

## Background

Appellant began working for the City in October 1974, and had been working as an "Equipment Operator 2" for approximately ten years before his employment was terminated in 2000. Shortly after he began his employment with the City, appellant became a member of the Union.

In 1979, the City designated the Union "the exclusive bargaining agent for certain employees in the general trades and labor and clerical/technical classifications of the City of Cumberland[.]" From July 1, 1998 through June 30, 2001, appellees were parties to a Collective Bargaining Agreement (the "Agreement"). Article IV, §§ 1–5 of the Agreement, about which we shall say more later in this opinion, outlines the procedures used in handling a "grievance or dispute which may arise between the parties[.]"

A condition of appellant's employment was that he must hold a commercial driver's license. The Federal Government requires individuals holding a commercial driver's license to submit to a random drug and alcohol screening. *See* 49 C.F.R. § 382 (2004). Accordingly, in September 1999, appellant submitted to a random drug test. The test results reported positive for marijuana.

Appellant received from the City a letter dated October 8, 1999. In it, the City informed appellant that he was in "violation of Rule # 4, section A, of the Rules [for Progressive Disciplinary Actions for Operating and Utility Employees (the 'Rules') ]," which the Union and the City had negotiated. Rule # 4 is titled "*3 DAYS OFF/5 DAYS OFF/DISCHARGE*," and provides, in pertinent part, that "[t]he use or possession of intoxicants or controlled dangerous substances by employees during their tour of duty or while on [C]ity property shall be cause for disciplinary layoff or dismissal. . . . " The City in-

formed appellant that he was suspended for three days and that, "[a]s a condition of continued employment with the City[,]" he would have to complete a drug counseling program and then submit to random monthly drug and alcohol screenings, as part of a one-year probation.[1] The City stated that, should appellant test positive or refuse to undergo the drug screening during his probationary period, he would be immediately terminated from employment.

Appellant completed the drug counseling program, returned to work, and submitted to the required monthly drug screenings with the Health Department. In late August 2000, he submitted a urine sample to the Health Department. The Health Department forwarded the sample to Friends Medical Laboratory ("Friends") in Baltimore, which reported that the sample tested positive for the presence of marijuana. The City notified appellant of the positive test result the following month, and informed him that, effective immediately, he was "suspended without pay pending the outcome of a pre-termination hearing[.]"

On September 7, 2000, a pre-termination hearing was held.[2] James Bestpitch, Union Representative, and John Keiper, Union President, attended the hearing with appellant. During the hearing, appellant disputed the test results. The hearing panel granted Mr. Bestpitch's request, on appellant's behalf, for additional time to submit information concerning the testing.

Mr. Bestpitch then obtained from the Allegany County Director of Human Resources and Personnel a facsimile containing information about an approved drug screening method-

---

1. In 1994, the City implemented an "Alcohol and Drug Program for the City of Cumberland" (the "Program").

2. The City explained in its memorandum of law in support of its motion for summary judgment that the Agreement does not contemplate a "pre-termination hearing" during the grievance process. The City nevertheless affords an employee a pre-termination hearing to comply with the opinion of the Supreme Court of the United States in *Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

ology, and apparently stating that, if a drug screening results in a positive test, a confirmatory test using a different method must be conducted. For some reason not reflected in the record, Mr. Bestpitch did not forward this information to the pre-termination hearing panel. Nor did he request additional information regarding testing methods from the Union's national office.

By letter dated September 11, 2000, the City, noting that it had received no further information from appellant concerning the drug test, informed him that his employment would be terminated effective September 12, 2000. Shortly thereafter, Mr. Bestpitch and Mr. Keiper prepared a grievance by appealing the City's decision to terminate appellant. The grievance asserted that appellant "was unjustly terminated" in violation of Article IV, § 7 of the Agreement.[3]

After a hearing on the grievance, the City informed Mr. Bestpitch that appellant's grievance was denied and his termination was upheld. The City pointed out that, although the Union had argued at the grievance hearing that the Health Department had not complied with federal drug testing procedures in conducting the September 2000 test of appellant's urine, the Union had offered no evidence, other than appellant's bare testimony, to support that claim.

Several weeks later, Mr. Bestpitch notified the City that the Union would proceed to arbitration on appellant's grievance, in accordance with the Agreement. On December 5, 2000, the Union held a regular meeting, at which appellant was present. During the meeting, the members were informed that the Union's Executive Board had recommended that the Union not pursue arbitration on appellant's behalf. Mr. Bestpitch told the members that appellant could challenge the City's decision based upon a "technicality" in the testing procedure that resulted in appellant's second positive drug test, but he was not sure that the "technicality or loophole [was] strong

---

3. Article IV, § 7 of the Agreement provides that "[t]he [City] shall not discharge any employee without just cause. The Union shall have the right to take up discharge of an employee as a grievance procedure."

enough to win arbitration." Mr. Bestpitch also explained that he and Mr. Keiper "learned some confidential information," that is, that appellant "admitted that he was wrong." Mr. Bestpitch advised the members that arbitration costs would include "approximately $2500 for the brief, and $1500 or more for the rest of the case."

The members discussed appellant's grievance, then voted to overturn the Executive Board's decision and to proceed to arbitration on appellant's behalf. Despite that vote, Mr. Bestpitch did not forward a "Request for Arbitration Panel" form to the City until December 18, 2000.

Several Union members who were not present at the December 5, 2000 meeting approached Mr. Bestpitch sometime later that month to discuss the possibility of reconsidering the vote to arbitrate appellant's grievance. Mr. Bestpitch advised them how to reconsider the vote at the next Union meeting.

On January 2, 2001, the Union met for its regular monthly meeting, during which the members discussed the possibility of reconsidering the vote to proceed to arbitration. Mr. Bestpitch informed them that they could do so if a two-thirds majority voted to reconsider. A vote was taken, and a two-thirds majority was not reached. Following this meeting, some Union members again approached Mr. Bestpitch and advised him that the motion to reconsider actually needed only a bare majority vote rather than a two-thirds vote to pass.

As Union president, Mr. Keiper called a special meeting, which was held on January 11, 2001. At that time, Mr. Bestpitch informed the members that he had incorrectly stated during the previous meeting that a motion for reconsideration required a two-thirds vote to pass, when in fact it required only a majority vote, which it had received. Mr. Bestpitch advised the members that, because the motion had passed during the January meeting, the members could now discuss whether to proceed to arbitration. He then told them that appellant could "pursue the issue in court if the [U]nion does not fight for him." The Union members voted to uphold

the Executive Board's initial decision that the Union not pursue arbitration of appellant's grievance.

Approximately one week later, Mr. Bestpitch notified appellant in writing that the Union would extend to him the right to proceed to arbitration with the City on his own behalf, absent Union representation, if he would "release [the Union] from any liability associated with th[e] case." Appellant accepted and informed the City of his desire to proceed with arbitration. Additionally, Mr. Keiper notified the City by letter that, although the Union "voted not to spend any of its [ ] financial resources on the case[,]" it did vote to "g[i]ve [appellant] all rights and privileges to pursue his appeal process through the arbitration process as outlined in the [ ] Agreement . . . at his own expense."

The City declined to proceed to arbitration "because the Union had withdrawn the grievance."

### The Lawsuit

On July 25, 2001, appellant filed a complaint in the Circuit Court for Allegany County against the City. In the complaint, appellant asked the court to order the City to enter into binding arbitration with him, pursuant to the Agreement.

The City filed a motion for summary judgment, arguing that the Agreement did not authorize an employee to arbitrate his grievance personally. The court denied the motion.

After amending his complaint once, appellant filed a second amended complaint naming both the City and the Union as defendants. The first count of the second amended complaint sought a court order compelling the City to enter into arbitration with appellant. The second count alleged wrongful termination, for which appellant sought $644,000.00 in damages. The third count sought a court order that appellant's grievance be decided in his favor because the City refused to enter into arbitration with him.[4] The fourth count alleged that the Union breached its duty of fair representation.

---

4. This count was based on Article IV, § 4 of the Agreement, which provides, in pertinent part: "Any grievance not appealed or answered

About six weeks before trial was set to begin, appellees filed individual motions for summary judgment, which appellant opposed. The motions came on for a hearing, during which the City argued that appellant had no right to compel the City to arbitrate his grievance absent Union representation. The City asserted that Article IV, § 6 of the Agreement, upon which appellant relied, does not confer upon an employee the right to compel arbitration, but merely maintains an employee's right to bring complaints directly to his or her supervisor.[5]

In support of its motion for summary judgment, the Union argued that appellant's alleged facts did not state a claim for breach of the duty of fair representation. The Union also echoed the City's position that appellant did not have an independent right to pursue arbitration. The Union acknowledged that Mr. Bestpitch had given appellant "bad advice" when informing him that the Union would allow him to arbitrate on his own. The Union argued that, per the October 8, 1999 letter from the City to appellant, he entered into a "last chance agreement" with the City after he failed his first drug test.

Appellant opposed summary judgment in favor of the Union on the ground that material facts were in dispute concerning whether the Union had breached its duty of fair representation. Appellant opposed summary judgment in favor of the City, not because there were material facts in dispute, but because he was entitled as a matter of law to compel arbitration.

On July 14, 2004, the court issued an opinion and order granting appellees' motions for summary judgment on all

---

at any step of the grievance procedure within the number of days specified shall be considered settled in favor of the employee if not answered by the Employer, and settled in favor of the Employer if not appealed by the aggrieved[.]"

**5.** Article IV, § 6 of the Agreement provides that "[n]othing herein shall be construed to deny the right of individual employees to present matters to the Employer on their own behalf."

counts. First, the court ruled that there was no factual basis for appellant's claim that the Union breached its duty of fair representation, because the facts, as alleged, did not make out a claim that the Union acted arbitrarily, capriciously, or in bad faith. In making that determination, the court considered the following: (1) the Union weighed the merits of appellant's claim that the second drug test was faulty; (2) the Union members were informed of the facts surrounding appellant's termination from employment and the cost of litigation; and (3) appellant had been given an opportunity to speak to the Union members. The court refused to review the internal procedures used at the Union's meetings, which appellant had argued were in violation of Robert's Rules of Order, indicating that the Union acted in a perfunctory manner.

Second, the court ruled that appellant did not have the personal right to compel arbitration with the City, and that the City was not required "to bargain with anyone other than [the Union] on the issue of [appellant]'s termination[,]" because the Union "is designated as the Exclusive Collective Bargaining Agent for [City] employees[.]" The court agreed with the City that Article IV, § 6 of the Agreement merely confirms the right of an individual employee "to bring a complaint to a supervisor's attention without having to follow the formal grievance process."

Third, the court rejected appellant's claim that Article IV, § 4 of the Agreement required a ruling that the grievance be deemed decided in appellant's favor because the City did not appeal or answer appellant's grievance. The court reasoned that this provision is "immaterial," because the City was not obligated to enter into arbitration with appellant.

On July 16, 2004, a separate document reflecting the court's judgment was entered on the docket. This timely appeal followed.[6] We shall add facts as they become pertinent to our discussion.

---

6. The Union filed a cross-appeal but later withdrew it.

## STANDARD OF REVIEW

Under Maryland Rule 2–501(f), summary judgment may be granted "if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law."

■ We review a circuit court's order granting summary judgment *de novo. Coroneos v. Montgomery County,* 161 Md.App. 411, 422, 869 A.2d 410 (2005). We determine whether there is any dispute of material fact, and, if there is none, we then determine whether the court was legally correct in its ruling. *Rockwood Cas. Ins. Co. v. Uninsured Employers' Fund,* 385 Md. 99, 106, 867 A.2d 1026 (2005); *Mutual Fire Ins. Co. of Calvert County v. Ackerman,* 162 Md.App. 1, 5, 872 A.2d 110 (2005). As we undertake this review, " 'we construe the facts properly before the court, and any reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party.' " *Rockwood,* 385 Md. at 106, 867 A.2d 1026 (citation omitted). " 'We ordinarily will uphold the grant of summary judgment only on a ground relied on by the trial court.' " *Pac. Employers Ins. Co. v. Eig,* 160 Md.App. 416, 428, 864 A.2d 240 (2004) (citation omitted).

## DISCUSSION

### I. The Duty of Fair Representation

■ Appellant argues that the Union breached its duty of fair representation "in the processing and handling of matters relating to his discharge." He asserts that the circuit court did not consider the facts in the light most favorable to him when it ruled on appellees' motion for summary judgment. He argues that the trial court erroneously "believe[d] that the issue of whether a union breaches a duty of fair representation is determined on the basis of whether there was a discussion and vote by the membership on the grievance." The court erred, according to appellant, in overlooking facts alleging that the Union representatives, Mr. Bestpitch and Mr. Keiper, did

not act "in good faith, with diligence, and in a non-perfunctory manner." Appellant points to his allegations that the Union failed to know or make inquiry into the City's Rules, which provided for only a five (5) day suspension on a second offense; failed to investigate or even inquire into the validity of the drug test results; conducted its meetings in a "perfunctory manner" by failing to adhere to Roberts Rules of Order; and misadvised the membership that appellant could personally arbitrate his grievance with the City, thereby manipulating the membership's vote not to arbitrate on his behalf. These allegations, appellant maintains, establish genuine issues of material fact, rendering summary judgment inappropriate.

The Union responds that it breached its duty of fair representation only if its representation of appellant was "arbitrary, discriminatory, or in bad faith," and that appellant's allegations fail to make out any such claim. The Union argues that appellant did not object to his 1999 suspension or the other conditions imposed on him for his continued employment and did not ask the Union to file a grievance on his behalf in 1999, and consequently, he should not be given the opportunity now to complain about the Union's lack of action in 1999; appellant's challenges relate merely to the Union's tactical strategy in handling his grievance; there is no factual support for appellant's argument that Mr. Bestpitch attempted to manipulate the votes of its members; and appellant's claim that it did not comply with Robert's Rules of Order is not a ground for finding a breach of the duty of fair representation.

It is well-established that a State court may entertain a suit by a union member against a union's officers and representatives "based on the member's claim that the union had, without good cause or reason, refused to take to arbitration the member's grievance against his employer." *Byrne v. Mass Transit Admin.*, 58 Md.App. 501, 508, 473 A.2d 956 (citing *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)), *cert. denied*, 300 Md. 794, 481 A.2d 239 (1984), *cert. denied*, 471 U.S. 1016, 105 S.Ct. 2021, 85 L.Ed.2d 303

(1985). The action arises under state law as a breach of contract claim. *Id.*

 The duty of fair representation has three requirements. It requires a union "[1] to serve the interests of all members without hostility or discrimination toward any, [2] to exercise its discretion with complete good faith and honesty, and [3] to avoid arbitrary conduct." *Vaca,* 386 U.S. at 177, 87 S.Ct. 903; *accord Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 44, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998). " 'Each of these requirements represents a distinct and separate obligation, the breach of which may constitute the basis for civil action.' " *Neal v. Potomac Edison Co.,* 48 Md.App. 353, 358, 427 A.2d 1033 (citation omitted), *cert. denied,* 290 Md. 719 (1981).

 " '[A] union is accorded considerable discretion in the handling and settling of grievances.' " *Neal,* 48 Md.App. at 358, 427 A.2d 1033 (citation omitted). A union does not necessarily breach its duty when it declines to take a member's grievance to arbitration. *See Vaca,* 386 U.S. at 191–92, 87 S.Ct. 903; *accord Meola v. Bethlehem Steel Co.,* 246 Md. 226, 235, 228 A.2d 254 (1967). Indeed, an " 'employee has no absolute right to insist that his grievance be pressed through any particular stage of the contractual grievance procedure. A union may screen grievances and press only those that it concludes will justify the expense and time involved in terms of benefitting the membership at large.' " *Neal,* 48 Md.App. at 358–59, 427 A.2d 1033 (citation omitted)(emphasis deleted). "[M]ere negligence . . . would not state a claim for breach of the duty of fair representation[.]" *United Steelworkers of Am., AFL–CIO–CLC v. Rawson,* 495 U.S. 362, 372–73, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990).

 "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' . . . as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). A union breaches the duty, "for example,

when it 'arbitrarily ignore[s] a meritorious grievance or process[es] it in [a] perfunctory fashion.' " *Int'l Bhd. of Elec. Workers v. Foust,* 442 U.S. 42, 47, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979) (quoting *Vaca,* 386 U.S. at 191, 87 S.Ct. 903). In other words, although " '[a] union may refuse to process a grievance or handle the grievance in a particular manner for a multitude of reasons, ... it may not do so without reason, merely at the whim of someone exercising union authority.' " *Neal,* 48 Md.App. at 359, 427 A.2d 1033 (citation omitted).

Appellant does not make clear whether his claim of a breach of the duty of fair representation is grounded in arbitrariness, discrimination, or bad faith, or a combination of these bases. We note, however, that he does not allege facts that would support a theory that the Union acted in a discriminatory way. Appellant seems to argue, instead, bad faith and arbitrariness. Regardless, appellant's argument before us is that the court erred in entering summary judgment because there are several disputed issues of material fact. He focuses on Mr. Bestpitch and Mr. Keiper's handling of his grievance, as Union representative and president respectively.

Before we address this argument, we must dispose of one other argument appellant presents on appeal. He argues at length that his claim for breach of the duty of fair representation rests in part on the Union's failure to challenge the conditions imposed on him when, in 1999, he tested positive for marijuana. The record reflects, however, that in 1999, appellant did not challenge the City's authority to impose the conditions or otherwise exhaust his available remedies. Instead, appellant completed the required drug and alcohol counseling and began monthly drug testing. Furthermore, he did not allege in his complaint a breach of duty by the Union arising out of the 1999 test, and, through counsel, he acknowledged to the circuit court that his claim against the Union involved matters arising only upon the termination of his employment in 2000. Any question whether the Union breached its duty of fair representation in any of its actions surrounding appellant's positive drug test in 1999 is simply not before us.

We are persuaded, however, that appellant properly alleged disputed material facts concerning whether the Union, through Mr. Bestpitch and Mr. Keiper, breached its duty of fair representation. We therefore agree with appellant that the Union was not entitled to summary judgment on this claim.

One factual dispute centers on the inferences that reasonably could be drawn from the circumstances surrounding Mr. Bestpitch's announcement to the Union's voting members that appellant could proceed on his own if the members voted not to pursue arbitration. Mr. Bestpitch explained during deposition that he relied on his own experience with a union in Anne Arundel County when he advised appellant and the Union members that appellant could arbitrate his grievance without Union representation.

The record contains no evidence concerning whether the Union reasonably believed that an individual employee can process a grievance at the arbitration stage, absent Union representation. Certainly, nothing in the record indicates whether the Union had consented previously to allowing an employee to arbitrate a grievance absent Union involvement and whether the City acquiesced or approved of such handling of a grievance.

A rational fact-finder could conclude from the facts alleged that Mr. Bestpitch was merely negligent in advising the membership and appellant that he could arbitrate on his own. Alternatively, a rational fact finder could conclude that Mr. Bestpitch handled appellant's grievance in a perfunctory manner, and, thus, arbitrarily. *See Foust,* 442 U.S. at 47, 99 S.Ct. 2121.

To be sure, the "wide range of reasonableness" standard affords the Union "room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez,* 525 U.S. at 45–46, 119 S.Ct. 292. Yet, we cannot say on the basis of this record that, as a matter of law, Mr. Bestpitch had the discretion to inform the members as he did, much less whether, in exercising that discretion, his conduct

was so far outside a wide range of reasonableness as to be wholly irrational. *See O'Neill,* 499 U.S. at 67, 111 S.Ct. 1127.

A separate factual dispute concerns whether appellant admitted to Mr. Keiper or Mr. Bestpitch that his urine sample was "dirty." Appellees maintain that appellant made that admission; appellant claims he did not. This dispute is material to establish what occurred during the December 5, 2000 Union meeting, when the first vote was held. According to Mr. Bestpitch, he informed the members at that time that appellant "admitted that he was wrong," that is, that his urine sample was "dirty." If, however, it is true that appellant did not admit that he was "wrong" (and, for present purposes, we must presume that he did not), then it can be inferred that, together with the rest of the facts surrounding the Union's handling of the grievance, Mr. Bestpitch did not "act with complete good faith and honesty," and in a manner that "avoid[ed] arbitrary conduct." *Vaca,* 386 U.S. at 177, 87 S.Ct. 903.

The court's summary judgment ruling raises additional concerns. We question the court's recitation of some of the "facts" and certain statements of the law, and, consequently, its application of the law to the facts.

The court incorrectly stated as a fact that the Union members "voted that [appellant] should proceed on his own, without [U]nion representation." The record reflects, however, that the Union voted on whether to proceed to arbitration, and that Mr. Bestpitch merely responded affirmatively to a member's question whether appellant "could still pursue the issue in court if the [U]nion does not fight for him." Mr. Bestpitch, in his capacity as Union Representative, then informed appellant, by letter, that he could arbitrate his grievance with the City without Union representation. We cannot discern the extent to which the court relied in its ruling on its incorrect factual statement concerning the Union's vote. In any event, we have discussed why the facts surrounding that matter should be resolved at trial.

We also question the court's statement that "[i]t seems that the driving forces behind the members' decision were both cost and strength of the merits of [appellant]'s claim, neither of which is arbitrary or capricious." The court's use of the word "seems" suggests that the court was not sure what the "driving forces" were behind the members' vote. Regardless of what *seemed* to motivate the members, the court should have considered all of the alleged facts in a light most favorable to appellant.

Moreover, assessing the "cost and strength of the merits" of a grievance may, in certain circumstances, constitute a breach of the duty of fair representation. In *Neal, supra,* we held that summary judgment was inappropriate and that a Union may have breached its duty of fair representation by announcing to those voting on whether to pursue an employee's grievance to arbitration, that the cost to the Union of arbitrating the grievance was $2,000.00, when in fact, the evidence arguably showed a much lower figure. 48 Md.App. at 363, 427 A.2d 1033.

The court in the case before us stated as a proposition of law that: "[a] union acts in bad faith when it ' "arbitrarily ignore[s] a meritorious grievance or processes it in a perfunctory manner." ' " This standard applies when a Union acts *arbitrarily,* not when it acts in *bad faith. See Young v. United Auto. Workers Labor Employment & Training Corp.,* 95 F.3d 992, 996–97 (10th Cir.1996). We do not know precisely how that misstatement of the law may have affected the court's summary judgment ruling; yet, as we shall discuss, "bad faith" involves issues related to the subjective motivations of the Union representatives. We suspect that the court's misstatement concerning this aspect of the duty of fair representation led it to overlook that the alleged facts could lead a fact finder to find that the Union representatives acted in bad faith.

To succeed on a theory of a bad faith breach of the duty of fair representation, appellant must show "fraud, or deceitful or dishonest action" on behalf of the Union. *See In*

re *ABF Freight Sys., Inc., Labor Contract Litigation,* 988 F.Supp. 556, 564 (D.Md.1997). Bad faith focuses not on "the objective adequacy of that union's conduct," but "on the subjective motivation of the union officials." *Thompson v. Aluminum Co. of Am.,* 276 F.3d 651, 658 (4th Cir.), *cert. denied,* 537 U.S. 818, 123 S.Ct. 92, 154 L.Ed.2d 24 (2002). The facts alleged, for example, that Mr. Bestpitch wrongly informed the voting members that appellant's urine was "dirty," that Mr. Bestpitch worked "behind the scenes" to convince the members to re-vote on whether to arbitrate appellant's grievance, and that Mr. Bestpitch incorrectly informed the members that appellant could arbitrate the grievance without Union representation. One or more of these facts, if established, could support a finding that Mr. Bestpitch acted in bad faith. Moreover, we note that resolution of this question will almost assuredly depend on the credibility of the witnesses. *See* 15 AM.JUR. PROOF OF FACTS 2d 65 § 9 (1978). It is for this reason that summary judgment is "perhaps not generally the best method of reaching the factual merits of a labor dispute...." *Meola,* 246 Md. at 239, 228 A.2d 254.

To be sure, an employee alleging a breach of the duty of fair representation often carries a heavy burden. *See In re ABF Freight,* 988 F.Supp. at 564 (stating "that a plaintiff alleging a breach of the union's duty of fair representation faces a heavy burden in seeking to establish that a union's actions were arbitrary, discriminatory, or conducted in bad faith"); *Shufford v. Truck Drivers, Helpers, Taxicab Drivers, Garage Employees & Airport Employees Local Union No. 355,* 954 F.Supp. 1080, 1087 (D.Md.1996) (same); *Sarro v. Retail Store Employees Union,* 155 Cal.App.3d 206, 202 Cal. Rptr. 102, 106 (1984) (stating that in *Vaca, supra,* the Supreme Court "placed a heavy burden on union members attempting to show a breach of the union's duty of fair representation in a grievance proceeding"). Nevertheless, the facts alleged, viewed in the light most favorable to appellant, could support a finding of arbitrary or bad faith conduct by Mr. Bestpitch and/or Mr. Keiper. Either of these findings would establish a breach of the Union's duty of fair represen-

tation. Notwithstanding the burden he shoulders to prove such a breach, appellant is entitled to have the issue litigated. We hold, therefore, that the court erred in entering summary judgment in favor of the Union on appellant's claim that the Union breached its duty of fair representation.

## II. The Claim of Wrongful Termination

In neither its "Opinion and Order" nor in its separate order entering summary judgment in favor of appellees did the court discuss count two of appellant's complaint, which alleged wrongful termination. We presume that the court did not discuss that count because it concluded that appellant did not establish a breach of the duty of fair representation against the Union, which is a prerequisite to the successful prosecution of a claim against an employer for wrongful discharge. *See Vaca,* 386 U.S. at 186, 87 S.Ct. 903; *Neal,* 48 Md.App. at 357, 427 A.2d 1033 (citing *Vaca* and stating that an employee claiming to have been wrongfully discharged may bring an action against his employer if he "*first* establish[es] that the Union breached its duty to him of fair representation").[7]

Because the court erred in entering summary judgment in favor of the Union on the claim of breach of the duty of fair representation, the court also erred in entering summary judgment in favor of the City on appellant's claim of wrongful discharge, which will survive if a breach by the Union is found. *See Vaca,* 386 U.S. at 185–86, 87 S.Ct. 903; *Meola,* 246 Md. at 235, 228 A.2d at 259.

## III. The Remaining Counts

Appellant argues that the court erred in entering summary judgment in favor of the City on counts one and

---

7. Of course, an employee who brings an action against the Union alleging breach of the duty of fair representation is not *required* to bring "a concomitant claim against an employer for breach of contract." *Breininger v. Sheet Metal Workers Int'l Ass'n,* 493 U.S. 67, 80, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989).

three of his second amended complaint. Neither argument has merit.

In count one, appellant sought a court order compelling the City to enter into arbitration with him. Appellant argues that the Union did not withdraw his request for arbitration and that it validly authorized him to proceed with arbitration absent Union representation. Appellant asserts that there is no express language in the Agreement prohibiting the Union from assigning to an individual employee the right to proceed to arbitration with the City. Appellant argues, moreover, that the court erred in deciding that Article IV, § 6 of the Agreement does not specifically authorize him to compel arbitration with the City.

The City responds that only it and the Union are parties to the Agreement and, therefore, they are the only parties who may compel arbitration. The City argues that the Agreement does not contemplate an appeal or demand for arbitration by an individual employee. It also asserts that Article IV, § 6 of the Agreement should be read as merely affording an employee the ability "to address matters with the employer on an informal basis."

Appellant conceded at the summary judgment hearing, and does not argue to the contrary on appeal, that there exist no issues of material fact concerning whether he has the right to compel the City to arbitrate his grievance absent Union representation. We therefore consider only whether the City is entitled to summary judgment as a matter of law.

Appellant requested that the court enter an order compelling the City to arbitrate his grievance. The relevant question, then, is whether an enforceable agreement exists between appellant and the City whereby appellant may compel the City to arbitrate his grievance. *See Rourke v. Amchem Prods., Inc.,* 384 Md. 329, 353, 863 A.2d 926 (2004).

The answer to that question requires that we employ principles of contract interpretation. Our analysis begins with the language of the Agreement itself. *See Towson Univ. v. Conte,* 384 Md. 68, 78, 862 A.2d 941 (2004). In interpreting a

contract's provisions, we "follow the law of objective interpretation of contracts[.]" *Id.* If a contract's language "is unambiguous, we give effect to its plain meaning . . . ." *Rourke,* 384 Md. at 354, 863 A.2d 926. The Court of Appeals has reiterated that "when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. . . . [T]he true test[, therefore, is] . . . what a reasonable person in the position of the parties would have thought it meant." *Conte,* 384 Md. at 78, 862 A.2d 941 (citations omitted).

The language of the Agreement is clear and unambiguous. Article IV, § 1 of the Agreement outlines the procedures used in handling a "grievance or dispute which may arise between the *parties,*" that is, the City and the Union. It is clear to us that steps one through three of the Agreement's grievance procedure mandate the Union's involvement. *See* Article IV, § 1 ("The Union Steward, or his designated assistant, and the President of the local Union, with the aggrieved employee, shall discuss the grievance or dispute with the immediate Supervisor . . . and department Director . . ."); Article IV, § 2 ("[T]he Union Steward, President of the local Union, the Union Representative and the aggrieved employee shall file with the department Director . . ."); Article IV, § 3 ("[T]he Union Steward and the President of the Local Union, Union Representative, and the aggrieved employee shall file with the City Administrator . . ."). Equally clear to us is that the reference to "either party" in step five means either the Union or the City, not an employee acting in an individual capacity. *See* Article IV, § 5 ("If the grievance is still unresolved . . . , either party may, by written notice to the other, request that the grievance be submitted to arbitration.").

In various provisions of the Agreement, the word "parties" is used as shorthand for reference to the Union and the City, the only "parties" to the Agreement. *See, e.g.,* Article II, § 1 (". . . an impasse occurs after both parties . . ."); Article II, § 1(f) ("The Employer [ (the City) ] and Union agree that the current agreement will continue in effect until both parties

have acted ..."). Moreover, the "Preamble" to the Agreement provides that the Agreement was made between only the City and the Union. Individual employees are not named as parties to the Agreement capable of asserting its provisions in their own right.

We also take into account Article IV, § 7 of the Agreement, which provides, in pertinent part, that "[t]he *Union* shall have the right to take up discharge of an employee as a grievance procedure." (Emphasis added). There is no provision in the Agreement authorizing an individual employee, on his own behalf, to take up his own discharge as a grievance procedure.

We consider as well Article III, § 1(a) of the Agreement, which provides that "[The City] recognizes [the] Union ... as the *exclusive* bargaining agent of the employees covered by this Agreement ... for the purpose of collective bargaining with respect to rates of pay, wages, hours of employment *and other conditions of employment.* ..." (Emphasis added).

Additionally, Article IV, § 6 does not bestow upon appellant the right to compel arbitration on his own behalf, as he suggests. The admonition in Article IV, § 6 that "[n]othing herein shall be construed to deny the right of individual employees to present matters to the Employer [ (the City) ] on their own behalf," when read with the rest of Article IV, simply maintains an employee's right to inform his employer of "matters" of contention on the job. If we read Article IV, § 6 as appellant suggests, we would have to overlook the above quoted portion of Article IV, § 7, as well as the clear references to the Union's required involvement in each step of Article IV, § 1 of the grievance process.

We conclude that a reasonable person interpreting Article IV, § 1 of the Agreement at the time the Agreement was made would construe it to mean that, in order to proceed to arbitration of an employee's grievance, the Union or the City would have to initiate the arbitration. An individual employee may not assert the right to arbitrate his grievance without the assistance of the Union. The court properly entered summary judgment in favor of the City on count one.

Our decision comports with the following explication in *Plumbers & Pipefitters Local Union No. 520 v. NLRB*, 955 F.2d 744, 753 (D.C.Cir.), *cert. denied*, 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992): "The *parties* to the agreement— not individual employees in the unit—are the ones who must create and administer the grievance procedure under the collective bargaining contract.... This is neither surprising nor unfair, for the union is the signatory to the agreement and thus is responsible for enforcing it." *See also Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) (quoting *Vaca, supra*, 386 U.S. at 191–92, 87 S.Ct. 903, for the proposition that if an individual employee could compel arbitration of his grievance, " 'the settlement machinery provided by [the collective bargaining agreement] would be substantially undermined' "); *Ostrofsky v. United Steelworkers of America*, 171 F.Supp. 782, 791 (D.Md.1959) (stating that "[a]llowing an individual to compel arbitration whenever he is dissatisfied with the company-union adjustment would discourage day-to-day cooperation between union and company in which grievances are treated as problems to be solved"), *aff'd*, 273 F.2d 614 (4th Cir.1960), *cert. denied*, 363 U.S. 849, 80 S.Ct. 1628, 4 L.Ed.2d 1732 (1960).

Finally, in count three of appellant's second amended complaint, appellant alleged that he is entitled to a judgment that arbitration with the City be decided in his favor because the City did not proceed to arbitration. In his brief, appellant concedes that if we hold, as we have, that he had no authority to compel the City to arbitrate his grievance, then the City "did not default under the [Agreement]." We agree with and accept that concession. The court properly entered summary judgment in favor of the City on count three.

**JUDGMENT OF THE CIRCUIT COURT FOR ALLEGA-NY COUNTY AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT FOR FUR-THER PROCEEDINGS CONSISTENT WITH THIS OPIN-ION.**

COSTS TO BE PAID ONE–HALF BY APPELLANT, ONE–FOURTH BY AMERICAN FEDERATION OF STATE AND MUNICIPAL EMPLOYEES LOCAL NO. 553, AND ONE–FOURTH BY THE CITY OF CUMBERLAND.