*Dale Cecil v. American Federation of State, County, and Municipal Employees*, No. 2049, Sept. Term, 2022. Opinion filed on March 28, 2024, by Albright, J.

ADMINISTRATIVE EXHAUSTION – DUTY OF FAIR REPRESENTATION – STATE LABOR RELATIONS BOARD

The administrative cause of action for breach of the duty of fair representation under Md. Code, State Pers. & Pens. § 3-306 (repealed 2023) ("SP&P § 3-306 (2022)") is concurrent to the judicial cause of action for breach of the duty of fair representation under Md. Code, Cts. & Jud. Proc. § 5-120 ("CJP § 5-120"). Exhaustion of administrative remedies is thus not required before commencing a judicial action for a fair representation claim. A plaintiff may bring a claim under CJP § 5-120 in a Maryland circuit court before or after bringing a claim under SP&P § 3-306 (2022) with the Maryland State Labor Relations Board.

TREATMENT OF FEDERAL LABOR LAW – STATE LABOR LAW – FEDERAL PREEMPTION – STATE STATUTORY ABROGATION OF COMMON LAW

Because Maryland labor law is at least partially modeled after federal labor law, federal labor law is persuasive to courts interpreting Maryland labor law. When deciding whether a state labor statute abrogates common law, courts may consider whether a similar federal labor statute preempts state law.

STATUTORY ABROGATION OF COMMON LAW – FIELD PREEMPTION – FEDERAL PREEMPTION

State statutory abrogation of common law may be explicit or implicit. There are two ways a state statute may implicitly abrogate common law: through conflict preemption or field preemption. Under conflict preemption, a state statute abrogates the common law when the statute is in direct conflict with the common law. Under field preemption, a state statute abrogates the common law when, by enacting the state statute, the legislature intended to occupy the whole field of law, subsuming the common law in the process.

STATUTORY ABROGATION OF COMMON LAW – LEGISLATIVE INTENT – STATUTORY CONSTRUCTION – CONSIDERATION OF POLICY

When determining whether a state statute abrogates common law, the central question is whether the legislature intended such a result. In examining legislative intent, courts may consider whether the policy behind the statute supports or contradicts abrogation of the common law.

STATUTORY ABROGATION OF COMMON LAW – DUTY OF FAIR REPRESENTATION – NEGLIGENCE – FIELD PREEMPTION

The existence of the judicial cause of action for a state union's alleged breach of the duty of fair representation abrogates related negligence claims. In codifying state employees' claims against a state union for breach of the duty of fair representation, the legislature intended to occupy the entire field of state fair representation claims. Therefore, in a situation covered by a state union's duty of fair representation, a claimant does not have an additional cause of action against the state union for negligence.

STATUTES OF LIMITATIONS – 28 U.S.C. § 1367(D) TOLLING – RELATION BACK OF STATE CLAIMS

A state claim is tolled by 28 U.S.C. § 1367(d) when the state claim was expressly asserted in a federal complaint filed within the state statute of limitations. If an amended federal complaint filed outside the state statute of limitations adds a state claim, then that state claim does not relate back to the date of the original federal complaint. However, if an amended federal complaint filed outside the state statute of limitations merely clarifies a state claim that was already asserted in the original federal complaint, then that state claim does relate back to the date of the original federal complaint, and 28 U.S.C. § 1367(d) may toll the statute of limitations on the state claim during the pendency of the federal case.

STATUTES OF LIMITATIONS – 28 U.S.C. § 1367(D) TOLLING – RELATION BACK OF STATE CLAIMS – ADDING VERSUS CLARIFYING A STATE CLAIM

When a plaintiff asserts only one claim in an original federal complaint and subsequently asserts a federal claim and a state claim in an amended federal complaint, the state claim does not relate back to the original federal complaint for purposes of 28 U.S.C. § 1367(d) tolling. In this situation, the amended federal complaint added the state claim, rather than clarifying it.

Circuit Court for Baltimore City
Case No. 24-C-22-003835

_____

DALE CECIL

v.

AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL EMPLOYEES

_____

Arthur,
Albright,
Wright, Alexander, Jr.
        (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Albright, J.

_____

Filed: March 28, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal comes to us from the Circuit Court for Baltimore City. In essence, it presents a dispute between an employee, Appellant, Dale Cecil ("Mr. Cecil"), and his union, Appellee, the American Federation of State, County, and Municipal Employees, Maryland Council 3, AFL-CIO ("AFSCME," "the Union"). The dispute arises out of Mr. Cecil's allegedly wrongful termination by his employer, the Maryland State Highway Administration ("SHA"), and the Union's handling of Mr. Cecil's administrative appeal from that termination. After Mr. Cecil's administrative appeal was dismissed, Mr. Cecil sued the Union in the U.S. District Court for the District of Maryland, alleging that the Union had breached its duty of fair representation to him by failing to file his administrative appeal on time.

Upon conceding that the U.S. District Court likely did not have jurisdiction over the state Union, Mr. Cecil voluntarily dismissed his federal complaint. He then reasserted his fair representation claim as a state-law claim in the Circuit Court for Baltimore City. As for limitations, Mr. Cecil claimed that it was tolled by 28 U.S.C. § 1367(d) while his claims were in federal court. Mr. Cecil also asserted a claim for negligence. The circuit court dismissed Mr. Cecil's complaint, concluding that the fair representation claim was untimely[1] and that his negligence claim was abrogated by Maryland's fair representation statute. Mr. Cecil then timely filed this appeal.

---

[1] Within this appeal, there are two contentions of failure to timely file. First, Mr. Cecil contends that the Union failed to timely file his wrongful termination appeal (an administrative appeal) with Maryland's Office of Administrative Hearings ("OAH"). Second, the Union contends that Mr. Cecil failed to timely file his fair representation

Mr. Cecil presents the following questions, which we have rephrased:[2]

1. Did Mr. Cecil timely file his state court complaint against the Union for breach of the duty of fair representation?

2. Does breach of the duty of fair representation under Md. Code, State Pers. & Pens. § 3-306 (repealed 2023) ("SP&P § 3-306 (2022)"), as this statute existed before its repeal, abrogate common-law negligence?[3]

---

claim against the Union. Our opinion today is primarily concerned with the latter contention, as it is dispositive in this case.

[2] Mr. Cecil's brief stated his questions presented as follows:

1. Whether Appellant Timely Filed the Circuit Court Complaint for Breach of the Duty of Fair Representation in the Circuit Court for Baltimore City on September 2, 2022.
2. Whether a Claim for Breach of Duty of Fair Representation Is Actionable Based on When a Union Representative Fails to File an Administrative Appeal.
3. Whether Common Law Claims for Negligence Against an Employee Organization Are Preempted by Md. Code Ann., State Pens. & Pers. § 3-306.

Because we conclude that Mr. Cecil's fair representation claim was untimely, we do not reach his second question regarding whether a claim for breach of the duty of fair representation is actionable when based on a union representative's failure to timely file an appeal.

[3] The Union presents an alternative ground for affirmance that Mr. Cecil was required to exhaust his administrative remedies before pursuing judicial action. Because the circuit court's holding was wholly in the Union's favor, the Union was not required to cross-appeal in order to present this alternative ground, and we may consider this argument as another issue before us. *See Offutt v. Montgomery Cnty. Bd. of Ed.*, 285 Md. 557, 564 n.4 (1979) ("Where a party has an issue resolved adversely in the trial court, but . . . receives a wholly favorable judgment on another ground, that party may, as an appellee and *without taking a cross-appeal*, argue as a ground for affirmance the matter that was resolved against it at trial." (emphasis added)).

We affirm the judgment of the circuit court for the reasons explained below.

## FACTUAL AND PROCEDURAL HISTORY

Before this cause of action arose, Mr. Cecil was a Maryland State employee and a member of AFSCME, the exclusive union for certain Maryland State employees. Mr. Cecil first sought the Union's assistance in representing him upon his termination from a position in the State Highway Administration ("SHA") (a unit of the Maryland Department of Transportation ("MDOT")). He was terminated for allegedly failing to comply with a mandatory alcohol test, so he sought to appeal his termination pursuant to MDOT employee procedures. The Union represented Mr. Cecil in a settlement conference with SHA, but the parties were unable to reach a resolution. Following the settlement conference, Mr. Cecil decided to continue with his appeal to the OAH. The OAH dismissed the appeal on December 22, 2021, concluding Mr. Cecil's administrative wrongful termination claim.

Just under six months later, Mr. Cecil brought a case in the U.S. District Court for the District of Maryland, alleging that the Union failed to timely file his appeal to the

---

Additionally, we may reach the issue of administrative exhaustion as a "threshold issue . . . regardless of what has been raised by the parties." *See Renaissance Centro Columbia, LLC v. Broida*, 421 Md. 474, 487 (2011) ("This Court has pointed out, time after time, that because of the important public policy involved, the Court will address *sua sponte* the related issues of primary jurisdiction, exhaustion of administrative remedies, finality of administrative decisions, and the availability of declaratory judgment actions. These are threshold issues which the Court will consider regardless of the positions that have been taken by the parties and regardless of what has been raised by the parties.").

OAH.[4] His original complaint in the U.S. District Court ("the original federal complaint," "the original complaint"), filed June 17, 2022, alleged one count of breach of the duty of fair representation. Mr. Cecil contended that by failing to timely file his wrongful termination appeal, the Union had breached its duty of fair representation. Given that Mr. Cecil cited the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185[5] as the basis for his claim, federal jurisdiction was grounded on the presence of a federal question. The Union filed a motion to dismiss Mr. Cecil's complaint, stating that since it was a state public union, the federal duty of fair representation did not apply to it.

Another month later, Mr. Cecil filed an amended complaint ("the amended federal complaint," "the amended complaint"). This complaint alleged two counts of breach of the duty of fair representation—one count under federal law, LMRA, 29 U.S.C. § 185 and one count under state law, SP&P § 3-306 (2022).[6] This complaint continued to allege

---

[4] Shortly before commencing his claim in the U.S. District Court, Mr. Cecil brought a claim with the National Labor Relations Board ("NLRB"), but he dismissed that claim shortly thereafter.

[5] 29 U.S.C. § 185 states, in relevant part:

> (a) . . . Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

[6] Although since repealed and moved to Md. Code, State Gov't § 22-206 (2023), with the exact same wording, SP&P § 3-306, as it existed at the time of the alleged breach, stated in relevant part:

federal question jurisdiction (by citing the LMRA, 29 U.S.C. § 185) but added a

paragraph stating, "AFSCME is a labor organization within the meaning of 29 U.S.C. §

152(5)[7] *and/or* Md. Code Ann., Cts. & Jud. Proc. § [5-120(a)]." (emphasis added)

(footnotes added).

---

> (b) Employee organizations and their agents or representatives are prohibited from engaging in any unfair labor practice, including:
>
> * * *
>
> (6) not fairly representing employees in collective bargaining or in any other matter in which the employee organization has the duty of fair representation.

(2022). We refer to this 2022 version *infra* as applicable to this case.

The duty of fair representation has a full and detailed history, but there is some debate as to where in our law the duty originates. We have previously said the duty originates under state contract law. *See Stanley v. AFSCME*, 165 Md. App. at 15; *Byrne*, 58 Md. App. 501, 508 (1984). However, other sources have said that the duty is a statutory obligation and arises from a union's designation as the exclusive representative of certain employees. *Rawson*, 495 U.S. 362, 373 (1990) ("The Union's duty of fair representation arises from the National Labor Relations Act itself. . . . The duty of fair representation is thus a matter of status rather than contract."); CJP § 5-120 (stating the statute applies to a breach of the duty of fair representation by an **exclusive representative**); F.T. Golder & D.R. Golder, Labor and Employment Law: Compliance and Litigation § 2:29 ("A union's duty of fair representation derives from its status as the exclusive bargaining representative of employees in a specified unit. . . . Without the exclusive bargaining representative status, the statutory justification for the imposition of a duty of fair representation does not exist.").

From where the duty of fair representation at issue here originates (statute or contract) appears to be of no consequence to this appeal. Neither party contends otherwise. Therefore, we need not explore that issue further today. *See* Md. Rule 8-131 ("Ordinarily, an appellate court will not decide any other issue [besides jurisdiction] unless it plainly appears by the record to have been raised in or decided by the trial court[.]").

[7] 29 U.S.C. § 152(5) provides:

5

Eventually, Mr. Cecil conceded that the Union's liability under the LMRA was "unlikely," and he moved to voluntarily dismiss both the federal and state claims. His voluntary dismissal stated that it was "pursuant to 28 U.S.C. § 1367(a) & (d)[8] and Fed. R. Civ. P. 41(a)(i)[.][9]" (footnotes added). The federal court approved the voluntary dismissal without prejudice.

---

When used in this subchapter—
(5) The term "labor organization" means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

[8] 28 U.S.C. § 1367(a) states:

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

While (d) states:

The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

[9] Federal Rule of Civil Procedure 41(a)(1)(A)(i) provides that "the plaintiff may dismiss an action without a court order by filing: . . . a stipulation of dismissal signed by all parties who have appeared."

6

Before his voluntary dismissal was even filed in federal court, Mr. Cecil filed a new complaint ("the state complaint") in the Circuit Court for Baltimore City. His state complaint repeated his state-law claim for breach of the duty of fair representation and added one count of negligence. At the time of the alleged breach, the Maryland Code provided an administrative remedy for a union's breach of its duty of fair representation. That remedy was available through the Maryland State Labor Relations Board ("SLRB").[10] The SLRB was "responsible for administering and enforcing certain provisions of" the State Personnel and Pensions title, including "investigat[ing] and tak[ing] appropriate action in response to complaints of unfair labor practices and lockouts." SP&P § 3-205 (2022) ("Powers and duties of Board"). The Maryland Code also provides a judicial cause of action for a union's breach of its duty of fair representation in Courts and Judicial Proceedings, Section 5-120 ("CJP § 5-120") (providing for a six-month statute of limitations).[11] Mr. Cecil did not clarify in his state

---

[10] Around the same time, Mr. Cecil also filed a claim with the SLRB. The SLRB dismissed Mr. Cecil's claim for failure to file within the ninety-day statute of limitations.

[11] CJP § 5-120 provides:

> (a) This section applies to an action for injunctive relief or damages for:
>     (1) A violation of a collective bargaining agreement covering an employee of the State or a political subdivision of the State; or
>     (2) A breach by an exclusive representative of the duty of fair representation owed to an employee of the State or a political subdivision of the State.
> (b) An action subject to this section shall be commenced within 6 months after the later of:

complaint under which statute he was asserting his fair representation claim. However, both parties agree that because AFSCME was the exclusive representative of certain Maryland employees, including Mr. Cecil, the Union owed Mr. Cecil a duty of fair representation under Maryland law.[12]

The Union moved to dismiss the state complaint for failure to state a claim under Maryland Rule 2-322(b).[13] The Union contended that Mr. Cecil had filed his fair representation claim outside the six-month limitations period and that Mr. Cecil had failed to exhaust his administrative remedies. For its limitations argument, the Union

> (1) The date on which the claim accrued; or
> (2) The date on which the complainant knew or should reasonably have known of the breach.

[12] Although the collective bargaining agreement is not a part of the record before us, we observe that collective bargaining law prohibits exclusive representatives, including AFSCME, from breaching their duty of fair representation. *See* SP&P § 3-306(b)(6) (2022) ("(b) Employee organizations and their agents or representatives are prohibited from engaging in any unfair labor practice, including: . . . (6) not fairly representing employees in collective bargaining or in any other matter in which the employee organization has the duty of fair representation."). The parties here agree that AFSCME owed Mr. Cecil a duty of fair representation.

[13] Maryland Rule 2-322(b) states:

> The following defenses may be made by motion to dismiss filed before the answer, if an answer is required: (1) lack of jurisdiction over the subject matter, (2) **failure to state a claim upon which relief can be granted**, (3) failure to join a party under Rule 2-211, (4) discharge in bankruptcy, and (5) governmental immunity. If not so made, these defenses and objections may be made in the answer, or in any other appropriate manner after answer is filed.

(emphasis added). The Union argued Mr. Cecil failed to state a claim upon which relief could be granted.

argued that because the federal court never had jurisdiction over Mr. Cecil's federal fair representation claim, limitations on his state-law claim was never tolled. The federal court never had original jurisdiction, according to the Union, because a fair representation claim will not lie under the LMRA against a state union. *See Adams v. Am. Fed'n of State, Cnty. & Mun. Emps. Int'l*, 167 F. Supp. 3d 730, 741 (D. Md. 2013) (emphasizing that the LMRA does not apply to employees of state unions). Because the federal court did not have original jurisdiction, the Union argued, the federal court also did not have supplemental jurisdiction over Mr. Cecil's state-law fair representation claim. The Union also argued that Mr. Cecil's causes of action for fair representation and/or negligence accrued earlier than December 17, 2021, so that Mr. Cecil's original federal complaint, filed on June 17, 2022, was already untimely under the six-month limitations period in CJP § 5-120(b) (establishing the statute of limitations for the judicial cause of action as six months). The Union further asserted that the tolling provision of 28 U.S.C. § 1367(d) would not have rendered Mr. Cecil's fair representation claim timely because he had voluntarily dismissed the fair representation claim in federal court. The Union also claimed that Mr. Cecil's amended federal complaint did not relate back to his original federal complaint for purposes of § 1367(d) tolling, leading again to the conclusion that his state-law fair representation claim was outside the six-month limitations period.

The Union also argued in its motion to dismiss that Maryland's breach of the duty of fair representation statutes abrogate, or preempt,[14] Maryland's common-law negligence. The Union contended that it only owes its members a duty of fair representation, so its members could only bring a claim for breach of the duty of fair representation, not a claim for negligence.[15]

Finally, the Union argued that Mr. Cecil was required to exhaust his administrative remedies before bringing a judicial action. The Union claimed that the SLRB is the primary forum for unfair labor practice claims and that statutory breach of the duty of fair representation is an unfair labor practice. Therefore, the Union asserted that the administrative remedies for a breach of the duty of fair representation were the primary

---

[14] Historically, courts have referred to abrogation and preemption of common law interchangeably. For clarity, we primarily use the word "abrogation" to refer to state statutory abrogation of common law and the word "preemption" to refer to federal preemption of state law.

One type of federal preemption of state law is field preemption. Field preemption occurs when it is clear from a federal statutory scheme that Congress meant to occupy an entire field of law. State statutory abrogation of common law borrows this reasoning for its own type of field preemption: a state statutory scheme may abrogate common law when it is clear the legislature intended the state statutory scheme to occupy an entire field of law. Because this analysis of whether a legislature occupied an entire field is the same for both preemption and abrogation, we refer to it as "field preemption" for both.

The issues of abrogation and preemption will be discussed fully *infra*, Discussion, Section II.

[15] The Union also argued that Mr. Cecil's state complaint failed to state a claim for breach of the duty of fair representation, but the circuit court did not reach this issue, so we need not either.

remedies, rather than concurrent, and Mr. Cecil should have exhausted these administrative remedies before pursuing the instant judicial action.[16]

Mr. Cecil filed an opposition to the Union's motion to dismiss. He contended that under 28 U.S.C. § 1367(d), the filing of his state-law fair representation claim in federal court tolled limitations, pausing the running of the limitations period until he dismissed his federal complaint. Because limitations had been tolled, Mr. Cecil argued, his state-law claim (as it appeared in his state complaint) had been filed within the six-month limitations period for fair representation claims. *See* CJP § 5-120(b). Mr. Cecil also contended that the legislature's codification of fair representation claims did not abrogate common-law negligence and that he was not required to exhaust his administrative remedies before bringing a judicial action.

The circuit court, Judge Lawrence Fletcher-Hill presiding, heard argument on the Union's motion and dismissed Mr. Cecil's state complaint. The court held that Mr. Cecil was not required to exhaust his administrative remedies prior to bringing a judicial action. As to the claims themselves, though, the circuit court held that Mr. Cecil's common-law negligence claim would not lie because it was abrogated by his fair representation claim. Mr. Cecil's fair representation claim (under CJP § 5-120) could not go forward because it was untimely.

---

[16] Mr. Cecil responded to the Union's claims in his Opposition to Defendant's Motion to Dismiss Complaint, to which the Union responded with Defendant's Reply in Support of Motion to Dismiss Complaint.

With regard to exhaustion, the circuit court held that Mr. Cecil was not required to exhaust his administrative remedies because he could bring a judicial action for statutory breach of the duty of fair representation concurrently with the administrative remedies available to him. The court based this holding primarily on CJP § 5-120. That statute provides:

> (a) This section applies to an action for injunctive relief or damages for:
>
> (1) A violation of a collective bargaining agreement[17] covering an employee of the State or a political subdivision of the State; or
> (2) A breach by an exclusive representative of the duty of fair representation owed to an employee of the State or a political subdivision of the State.
>
> (b) An action subject to this section shall be commenced within 6 months after the later of:
>
> (1) The date on which the claim accrued; or
> (2) The date on which the complainant knew or should reasonably have known of the breach.

CJP § 5-120 (footnote added).

The circuit court reasoned that the legislature would not establish a six-month statute of limitations for a claim under this statute unless it intended to allow plaintiffs to

---

[17] A collective bargaining agreement is a labor contract between an employer and a union representing employees that sets the terms and conditions of employment. *See Collective Bargaining Agreement*, Westlaw Practical Law, Glossary, ID 4-504-1300, https://1.next.westlaw.com/Glossary/PracticalLaw/Ibb09e90eef0511e28578f7ccc38dcbee ?transitionType=Default&contextData=(sc.Default) (last visited Feb. 22, 2024); *Collective Bargaining Agreement*, Merriam Webster, https://www.merriam-webster.com/legal/collective%20bargaining%20agreement (last visited Feb. 22, 2024).

bring the claim at the same time as the available administrative remedies. If a plaintiff were required to exhaust their administrative remedies first, then establishing a judicial cause of action with a six-month statute of limitations would be ineffective.

With regard to abrogation, the circuit court held that Mr. Cecil's negligence claim was abrogated by the statutory claim for breach of duty of fair representation. It explained that allowing a plaintiff to bring a negligence claim "akin to . . . malpractice" in addition to a fair representation claim would "do away with the specialized law that is built up around breach of duty of fair representation." It reasoned that the legislature intended to regulate this area closely, including through various provisions concerning the duty of fair representation. The circuit court explained that this interpretation is in line with the federal interpretation of federal statutes, i.e., that breach of the federal duty of fair representation preempts state common-law negligence. Therefore, the circuit court dismissed Mr. Cecil's negligence claim as abrogated.

With regard to the timeliness of Mr. Cecil's fair representation claim, the circuit court held that it was not timely because his amended federal complaint did not relate back to his original federal complaint. While the circuit court found that the accrual date for Mr. Cecil's cause of action was December 22, 2021— the date the OAH issued its dismissal and less than six months before Mr. Cecil filed his original federal complaint— it also found that Mr. Cecil's original federal complaint did not assert a state-law claim. The court reasoned that the amended federal complaint did not relate back to the original federal complaint for purposes of § 1367(d) tolling because the amended complaint added

13

a new cause of action (Mr. Cecil's state-law claim), rather than simply clarifying the original complaint's federal claim.

Moreover, the circuit court ruled that Mr. Cecil's voluntary dismissal of his amended federal complaint disqualified him from using § 1367(d) tolling to reinstate his claims in state court. It held that for a plaintiff to take advantage of § 1367(d) tolling, the federal court must have dismissed at least the federal claim. Under § 1367(d), once the federal court has dismissed the federal claim, then either the federal court can dismiss the state claim along with the federal claim, or the plaintiff can voluntarily dismiss the state claim. However, here, because Mr. Cecil voluntarily dismissed the federal claim, the federal court did not dismiss it, so he did not meet that prerequisite for § 1367(d) tolling. Thus, the court dismissed Mr. Cecil's state-law fair representation claim on two grounds: that the amended complaint did not relate back and that Mr. Cecil had voluntarily dismissed the claim. But the court added that its dismissal would have been appropriate on either ground alone.[18]

---

[18] A plaintiff must meet each of the requirements set forth in § 1367(d) to take advantage of tolling; if a plaintiff fails just one requirement, their claim will not be tolled. The circuit court ruled that Mr. Cecil met the first requirement: he filed his federal claim within six months from his claim's date of accrual. However, the court ruled that Mr. Cecil failed on the second requirement, relation back, and again on the third requirement, affirmative dismissal by the federal court. The court dismissed Mr. Cecil's claim for failure to meet the second requirement. However, it explained that even if Mr. Cecil had met that requirement, he failed the third requirement, so it dismissed his claim on that ground as well. Thus, according to the circuit court, to proceed, Mr. Cecil would have had to meet both the relation back and the dismissal by the federal court requirements. Because it held that Mr. Cecil failed the second and third requirements, the court did not examine any further requirements.

This timely appeal followed.

## STANDARD OF REVIEW

Because this appeal comes to us from a motion to dismiss, we review the circuit court's rulings *de novo*. *See Stanton v. State*, 258 Md. App. 371, 378-79 (2023). "Generally, the standard of review of the grant or denial of a motion to dismiss is whether the trial court was legally correct." *Blackstone v. Sharma*, 461 Md. 87, 110 (2018) (internal quotations omitted). In reviewing the rulings, "'we assume the truth of all well-pleaded facts and allegations in the complaint, as well as the reasonable inferences drawn from them, in a light most favorable to the non-moving party.'" *Green Healthcare Sols., LLC v. Natalie M. LaPrade Md. Med. Cannabis Comm'n*, 254 Md. App. 547, 565-66 (2022) (quoting *Forster v. State, Off. of Pub. Def.*, 426 Md. 565, 579 (2012)). Thus, we view the facts and inferences in a light most favorable to Mr. Cecil.

## DISCUSSION

We conclude that the circuit court properly dismissed Mr. Cecil's complaint. Although Mr. Cecil need not have exhausted his administrative remedies before filing his circuit court complaint, his negligence claim fails because Maryland's statutory duty of fair representation abrogates common-law negligence. Mr. Cecil's fair representation claim fails because it is untimely. Thus, we affirm the circuit court's judgment.

### I.    EXHAUSTION

It is uncontested that Mr. Cecil failed to exhaust his administrative remedies prior to bringing this suit. However, the parties disagree about whether exhaustion was

15

required. Mr. Cecil would not be able to maintain this action if he was required to exhaust his administrative remedies first. *See Zappone v. Liberty Life Ins.*, 349 Md. 45, 60 (1998) (explaining that where administrative remedies are the primary remedies, the plaintiff must first exhaust the administrative remedies and seek judicial review of an adverse administrative decision before proceeding with alternative judicial remedies). Mr. Cecil contends that exhaustion was not required because the administrative and judicial remedies were meant to be concurrent, meaning he could have sought his administrative remedies at the same time as, or even after, bringing this judicial action. Conversely, the Union argues that Mr. Cecil was required to exhaust his administrative remedies because they are the primary remedies.[19] Consequently, we start by considering whether exhaustion was required.

The Maryland Supreme Court stated in *Zappone v. Liberty Life Insurance* that when administrative remedies are available, they are either the exclusive remedies, the primary remedies, or concurrent remedies. 349 Md. at 60; *see also Prince George's County v. Ray's Used Cars*, 398 Md. 632, 644-45 (2007) (reiterating and further explaining the process for examining the three types of administrative remedies). An exclusive administrative remedy is the only remedy available, to the exclusion of judicial remedies. *Zappone*, 349 Md. at 60. When an administrative remedy is the primary

---

[19] Another option is that administrative remedies are exclusive, meaning, as we explain below, that judicial remedies are not available. Here, neither party contends that the administrative remedies available to Mr. Cecil were exclusive.

remedy, a plaintiff must exhaust their administrative remedies before pursuing judicial action. *Id.* ("[A] claimant must invoke and exhaust the administrative remedy, and seek judicial review of an adverse administrative decision, before a court can properly adjudicate the merits of the alternative judicial remedy."). When administrative remedies are concurrent, a plaintiff can pursue their judicial remedies at the same time as or even before the administrative remedies. *Id.* at 61 ("the plaintiff at his or her option may pursue the judicial remedy without the necessity of invoking and exhausting the administrative remedy[.]").

For Mr. Cecil's present action to be justiciable, the administrative remedies must be concurrent with the judicial remedies because Mr. Cecil did not exhaust his administrative remedies before filing this action. First, this action would not be able to proceed if the administrative remedies were exclusive because then no judicial action would be allowed. Second, this action would not be able to proceed if the administrative remedies were primary because then Mr. Cecil must first have obtained a final decision from the SLRB. Mr. Cecil did bring an administrative action with the SLRB; however, he filed that action around the same time that he filed the present action. The SLRB action was not close to final when Mr. Cecil brought the present action. Thus, for Mr. Cecil's case to proceed, the administrative remedies must be concurrent.

The extent to which someone must exhaust their administrative remedies before pursuing judicial action is "a question of legislative intent." *Zappone*, 349 Md. at 60. Courts first look to whether the legislature has expressly set forth its intent in creating the

17

administrative remedy. *Id.* at 62 (explaining it is rare for the legislature to do so). Where the legislature does not expressly set forth its intent, we begin with the rebuttable presumption that the administrative remedies are the primary remedies, and we consider whether various factors, set forth in *Zappone*, rebut this presumption. *Id.* at 63-64. These factors include other indications of legislative intent, the comprehensiveness of the administrative scheme, the administrative agency's view of its own jurisdiction, and the nature of the alternative judicial cause of action, including the extent of reliance on the statutory scheme and on the administration's expertise. *See id.* at 64-66 (describing each of these factors and providing examples).

In *Zappone*, for example, our Supreme Court held that the administrative remedies at issue were concurrent, and no exhaustion was required. *Id.* at 67. In that case, an insurance company offered a man a life insurance policy that would generate wealth quickly with only one premium payment. *Id.* at 53. The man took out a loan and purchased the policy. *Id.* However, upon issuance of the policy, the man discovered that the interest on his loan was not tax-deductible as the insurer had maintained, and the one-time premium payment exceeded the maximum limits established by Congress, resulting in more taxes. *Id.* at 53-54. Although the insurer told the man they would fix it, they never did. *Id.* at 55. Further, because of the insurer's misrepresentations, at the end of its term, the insurance policy would not nearly meet its face value as represented to the man. *Id.* at 55-56. The man brought a multi-count complaint in the Circuit Court for Montgomery County. *Id.* at 56. The circuit court dismissed the man's complaint, holding

that the administrative remedies available under the Unfair Trade Practices subsection of the Insurance Code, Md. Code (1957, 1994 Repl. Vol.), Art. 48A, subtitle 15, §§ 212-40J, were the exclusive remedies. *Zappone*, 349 Md. at 57. The case proceeded to this Court and eventually our Supreme Court. *Id.*

Our Supreme Court concluded that there was no express legislative intent and that the administrative remedies were not exclusive. *Id.* at 66-67. The court found that the legislature had not expressly set forth its intent because there was no language in the Insurance Code's Unfair Trade Practices subsection indicating how to treat the administrative remedies. *Id.* Additionally, the court noted that the administrative remedies could not be exclusive because the plaintiffs had available judicial causes of action. *Id.* at 67. Therefore, the court began with the presumption that the administrative remedies were primary.

However, upon weighing the factors, the court held the presumption was rebutted, and the administrative remedies were concurrent. *Id.* at 67-68. It found that the plaintiff's judicial remedies were completely independent of the Insurance Code; for example, their right to recover money damages was based on common-law tort principles. *Id.* at 67. The court also found that the adjudication of these judicial remedies did not rely on the expertise of the Insurance Commissioner. *Id.* Further, the court noted that while the administrative scheme was comprehensive, it was not all-encompassing, and the Insurance Commissioner did not view the administrative remedies as the primary remedies. *Id.* at 67-68. Taken together, the court ruled that these factors weighed against

19

the presumption that the available administrative remedies were "primary." As a consequence, the court ruled that the administrative remedies were concurrent and that exhaustion was not required. *Id.* at 68.

Likewise, Mr. Cecil was not required to exhaust his administrative remedies because the administrative remedies here are concurrent remedies, rather than primary or exclusive. The Union argues that the administrative remedies are the primary remedies in this case, meaning Mr. Cecil was required to exhaust his administrative remedies before pursuing judicial remedies. Mr. Cecil did not contend that he had exhausted his administrative remedies. Rather, Mr. Cecil argued[20] that the available administrative remedies are concurrent to the available judicial remedies, so his failure to exhaust his administrative remedies is inconsequential to the present action.

To start, there is no express statement in the statutory language of SP&P § 3-306 or CJP § 5-120 that clarifies whether the administrative remedies are exclusive, primary, or concurrent. *See* SP&P § 3-306 (2022) (providing the powers and duties of the SLRB); CJP § 5-120 (establishing a statute of limitations for bringing a judicial action). However, creating a judicial remedy in CJP § 5-120 at least means that the legislature did not intend for the administrative remedies to be exclusive. Therefore, we begin with the rebuttable presumption that the administrative remedies through the SLRB are the primary remedies, but we find the *Zappone* factors rebut that presumption.

---

[20] Mr. Cecil's brief does not cover this issue, so we draw on his arguments during the hearing on the motion to dismiss.

Although CJP § 5-120 and SP&P § 3-306 (2022) do not expressly state how the judicial and administrative remedies should interact, other legislative intent indicators, such as the statutory and regulatory frameworks, provide insight on the issue. *See Zappone*, 349 Md. at 67 (analyzing legislative intent indicators). For example, as Mr. Cecil's counsel pointed out during oral argument at the circuit court, the statute of limitations for judicial relief does not reasonably allow for administrative exhaustion when compared with the statute of limitations for administrative relief. The administrative statute of limitations is ninety days, or three months, while the judicial statute of limitations is six months. *See* COMAR 14.32.05.01(C); CJP § 5-120(b). The SLRB took 93 days to decide whether to dismiss Mr. Cecil's claim for breach of the duty of fair representation.[21]

Using the timeline of Mr. Cecil's claim as an example, a plaintiff may not be able to timely bring a judicial cause of action if we considered the administrative remedies to be primary and to require exhaustion. If a plaintiff filed for administrative relief 89 days after their claim accrued, they would be within the administrative statute of limitations. However, assuming the SLRB took 93 days to even decide whether to dismiss the claim (as it did here), the administrative decision would not be final until six months and two days after the claim accrued. Therefore, if plaintiffs were required to exhaust their administrative remedies before bringing a judicial action, they would not be able to bring

_____

[21] Mr. Cecil brought the current case concurrently with a claim in the SLRB for breach of the duty of fair representation, a claim the SLRB eventually dismissed.

21

the judicial action under CJP § 5-120 timely within the six-month statute of limitations. This scenario also only considers how long it took for the SLRB to decide whether to *dismiss* Mr. Cecil's claim; deciding Mr. Cecil's claim on the merits likely would have taken the SLRB even longer. Thus, if a plaintiff were required to wait to bring a judicial action until after exhausting their administrative remedies, it would often be impossible to bring the judicial action within the six-month statute of limitations.

At the time of the suit, the administrative scheme also was not comprehensive enough to afford Mr. Cecil all the remedies that he sought. *Id.* (finding that while the administrative scheme was comprehensive, it was not "all-encompassing"). At that time, the SLRB[22] was "responsible for administering and enforcing provisions of" the Collective Bargaining Title of the Maryland Code, State Personnel and Pensions. SP&P § 3-205(a) (2022).[23] The SLRB's powers included the ability to "investigate and take

---

[22] The legislature recently amended the relevant statutes, and the SLRB no longer exists. Instead, claimants may now seek redress through the Public Employee Relations Board (PERB). *See* Md. Code, State Gov't § 22-301 (2023) (establishing the PERB). Because the SLRB was in place at the relevant times in this action, we analyze the powers the SLRB had. Our conclusions about the SLRB pertain only to the SLRB; we express no opinion about the PERB herein.

[23] In full, SP&P § 3-205(a) (2022) stated, "The Board is responsible for administering and enforcing provisions of this title relating to employees described in § 3-102(a)(1)(i) through (iv) and (vi) through (xii), (2), and (3) of this title."

SP&P § 3-205(b)(3) (2022) provided for the administrative cause of action: "In addition to any other powers or duties provided for elsewhere in this title, the Board may: . . . investigate and take appropriate action in response to complaints of unfair labor practices and lockouts.

appropriate action in response to complaints of unfair labor practices[,]" which would include a breach of the duty of fair representation. SP&P § 3-205(b)(3) (2022). Further, under Code of Maryland Regulations (COMAR) 14.32.05.02(L)(3),[24] the SLRB was granted the power to reinstate employees if it found an unfair labor practice and deemed it necessary to remedy such practice.

However, the administrative scheme was not all-encompassing because the SLRB generally did not award damages. In a concurrence in 2007, Interim SLRB Chairman Allen G. Siegel lamented the SLRB's inability to award damages.[25] *Md. State Emps. Union, AFSCME, Council 92 v. Dep't of Md. State Police*, SLRB ULP Case No. 05-U-04, Op. No. 8, at 6 (Apr. 6, 2007). He compared the SLRB's powers to the powers of the federal analogue, the National Labor Relations Board (NLRB), stating, "[I]t is well settled under the [National Labor Relations Act (NLRA)],[26] for example, that the sole redress available under the [NLRA] is to 'remedy' the illegal conduct, excluding any

---

[24] COMAR 14.32.05.02(L)(3) says, "If the Board finds an unfair labor practice has been or is being committed, the Board shall take the action that it deems necessary to remedy the unfair labor practice including: . . . Reinstatement[.]"

[25] According to H.B. 1280, 2013 Leg., 433rd Sess. (Md. 2013), a 2010 SLRB majority opinion confirmed that the SLRB does not have the statutory authority to award back pay. *See AFSCME MD v. Department of Budget and Management*, SLRB Case No. 10-U-04 at 15 (Sept. 16, 2010). However, this case was not made public through any online sources.

[26] The NLRA is a federal act that protects employees' rights to self-organize and engage in collective bargaining. *See* 29 U.S.C. § 151. It also empowers the NLRB to settle labor disputes and prevent unfair labor practices. *See* 29 U.S.C. § 160.

punitive action. . . . I would, if authorized by the statute, also assess an appropriate penalty." *Id.* (footnote added). Thus, at least a concurrence has recognized that the SLRB did not have the power to grant such damages. In that case, the SLRB restored the status quo by reinstating the leave policy in place prior to the unfairly enacted leave policy and restoring any leave lost by employees. However, it did not issue any backpay or other monetary damages. Likewise, although it could have reinstated Mr. Cecil, the SLRB likely would not have been able to issue Mr. Cecil his requested backpay in this case, and Mr. Cecil's only available method of redress for backpay would have been the courts.

In considering the agency's view of its own jurisdiction, the SLRB has not ruled on whether claimants need to exhaust their administrative remedies before resorting to the courts. *Cf. Nat'l Asphalt Pavement Ass'n, Inc. v. Prince George's County*, 292 Md. 75, 80 (1981) (giving weight to the agency's interpretation of its own jurisdiction in relation to the courts'); *Zappone*, 349 Md. at 67-68 (noting the Insurance Commissioner did not view the administrative remedies as primary). The SLRB has heard and decided one case in which the respondent argued the petitioner needed to exhaust his administrative remedies, but the Board dismissed the claim as untimely, thus not reaching the exhaustion claim. *Jerome Lewis v. J. Deweese Carter Youth Facility*, SLRB Case No. 2018-U-04 (Jan. 31, 2018). Therefore, this factor does not weigh for or against a finding that administrative exhaustion is required.

Regarding the nature of the alternative judicial cause of action, CJP § 5-120's statutory scheme does not heavily rely on SP&P § 3-306's administrative scheme, and

24

CJP § 5-120's judicial cause of action is not reliant on the SLRB's expertise. *See Zappone*, 349 Md. at 67 (finding the statutes were independent of each other). The statute establishing the judicial cause of action and the process for administrative remedies are two separate statutes contained in two entirely separate articles of the Maryland Code. And neither statute references the other.

Further, unlike other schemes, each statutory scheme lacks any consideration for the other that would indicate the administrative scheme is supposed to take priority. COMAR 14.32.05.01(C) sets the administrative statute of limitations at ninety days: "The complaint shall be filed with the Board within 90 days from the later of the alleged violation or following the time that a reasonable person would, upon exercising due diligence, have discovered the occurrence of the alleged violation." CJP § 5-120(b) sets the judicial statute of limitations at six months: "An action subject to this section shall be commenced within 6 months after the later of: (1) The date on which the claim accrued; or (2) The date on which the complainant knew or should reasonably have known of the breach." Comparatively, the federal Equal Employment Opportunity Commission ("EEOC") allows for an extension on its statute of limitations in consideration of state administrative proceedings. 42 U.S.C. 2000e-5(e)(1).[27] The EEOC statute establishes the

---

[27] That subsection says:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the

25

statute of limitations for filing a claim with the EEOC as 180 days. *Id.* However, if the

claimant also files with a state court or agency, the EEOC statute of limitations is

extended to three hundred days. *Id.* That statutory scheme thus accommodates, i.e.,

allows time for a claimant to pursue, state remedies.

In the SLRB's case, the legislature could have similarly tolled the statute of

limitations for filing a judicial action while an SLRB action was pending, but it did not.

That the legislature did not include any consideration in the judicial statute for the

administrative procedures further suggests that the legislature intended each scheme to

function independently of each other and each remedy to progress concurrently. *See*

COMAR 14.32.05.01(C); CJP § 5-120(b).

Moreover, before it was replaced by the PERB, the SLRB did not lend any

particular expertise to the judicial proceedings for fair representation breaches. To be

sure, the SLRB held subject matter expertise in labor disputes. However, when compared

---

person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

42 U.S.C. 2000e-5(e)(1).

to courts, the SLRB did not hold particular expertise in fair representation claims.[28] Since

fair representation claims are based on unions' collective bargaining agreements and their

duty to employees, resolving fair representation disputes is ordinarily a matter of contract

interpretation or determining whether the union met its duty of care, similar to

negligence. *See Byrne v. Mass Transit Admin.*, 58 Md. App. at 508 ("The duty of fair

representation does not arise under the LMRA, but rather as a private cause of action

under State law for breach of contract."); *see also Guss v. Fort Hays State Univ.*, 173

P.3d 1159, 1165 (Kan. App. 2008) ("The issues presented here are matters of ordinary

contract interpretation in the familiar context of an employment agreement. They involve

no specialized or arcane expertise[.]"). Courts are accustomed to adjudicating contract

disputes and negligence claims. Further, the legislature has already recognized that courts

need no specific expertise to resolve fair representation claims because it already

entrusted that duty to courts in CJP § 5-120.

Thus, similar to the judicial causes of action in *Zappone*, judicial proceedings for

fair representation claims under CJP § 5-120 are "wholly independent" of the State

Personnel and Pensions title. *See Zappone*, 349 Md. at 67 (explaining the common-law

---

[28] That an agency holds expertise in one area does not necessarily mean that that agency holds particular expertise in a type of dispute within that area. *Compare Zappone*, 349 Md. at 67 (finding the Insurance Commissioner's expertise was irrelevant to the judicial cause of action), *with United Ins. Co. of Am. v. Md. Ins. Admin.*, 450 Md. 1, 31 (2016) (concluding that the claims depended upon the Maryland Insurance Administration's expertise because they involved "the nature and extent of retroactive enforcement to their in-force policies, including the impact of enforcement on matters concerning reasonable reliance and settled expectations").

causes of action at issue were "wholly independent of the Insurance Code's Unfair Trade Practices subtitle"). *Compare* CJP § 5-120 (establishing the judicial cause of action), *with* SP&P § 3-205(b)(3) (2022) (establishing the administrative cause of action). Therefore, the statutory scheme for the alternative judicial cause of action does not rely on the SLRB's expertise.

Because almost all of the factors weigh against the SLRB providing the primary remedies, we find that it provided concurrent remedies. Mr. Cecil need not have exhausted his administrative remedies before resort to the courts for his judicial remedies.

## II. STATUTORY ABROGATION OF COMMON-LAW NEGLIGENCE

We conclude that by enacting duty of fair representation statutes, the legislature occupied the field of law pertaining to fair representation claims, thereby abrogating common-law negligence. Therefore, the circuit court was correct to dismiss Mr. Cecil's claim for negligence.

Mr. Cecil argues that the duty of fair representation does not abrogate negligence and that he should be able to maintain his negligence claim separately from his fair representation claim. He asserts that the legislature did not expressly state that a fair representation claim should preempt negligence, and abrogation of the common law by implication is strongly disfavored.

The Union argues that Mr. Cecil's claim for negligence is abrogated by the existence of a statutory cause of action for breach of the duty of fair representation. It contends, as the circuit court held, that similar to federal law, under field preemption,

28

Maryland's General Assembly has occupied the field of state labor relations so fully as to exclude other causes of action. Further, under conflict preemption, a negligence claim would be inconsistent with a duty of fair representation claim because they entail different standards. Thus, Maryland's statutory fair representation framework abrogates common-law negligence.

Maryland's General Assembly "'is authorized to change or abrogate the common law as it may think most conducive to the general welfare, provided it does not in the process run afoul of the federal and state constitutions[,]'" and it may do so either expressly or impliedly. *WSC/2005 LLC v. Trio Ventures Assocs.*, 460 Md. 244, 257-58 (2018) (quoting *Jones v. State*, 303 Md. 323, 343-44 (1985) (Cole, J., concurring)). The first way to abrogate common law is express abrogation through statutory language. For this method, we require a "strong pronouncement" by the legislature. *Id.* at 258.

Regarding the second way, it is the rare case that the common law is impliedly abrogated. Maryland law long ago established "that statutes are not presumed to repeal the common law 'further than is expressly declared, and that a statute, made in the affirmative without any negative expressed or implied, does not take away the common law.'" *Robinson v. State*, 353 Md. 683, 693 (1999) (quoting *Lutz v. State*, 167 Md. 12, 15 (1934) (internal citations omitted)). However, a statute may impliedly abrogate the common law in two ways: "[w]here a statute and the common law are in conflict [conflict preemption], or where a statute deals with an entire subject matter [field preemption]." *Id.*

29

Maryland's duty of fair representation originally arose as "a private cause of action . . . for breach of contract[.]" *Byrne*, 58 Md. App. at 508; *Vaca v. Sipes*, 386 U.S. 171 (1967) (holding state courts had jurisdiction to decide such claims). We recognized the duty of fair representation under state law in *Stanley v. Am. Fed'n of State & Mun. Emps. Loc. No. 553* ("*Stanley v. AFSCME*"), 165 Md. App. 1 (2005). We stated that, regarding claims for breach of the duty of fair representation, a plaintiff employee carries the burden of showing that the union's conduct was arbitrary or in bad faith. *Id.* at 20. We stated that mere negligence would not be sufficient to state a claim for breach of the duty of fair representation. *Id.* at 15; *accord United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372-73 (1990) (holding the same under federal law). Rather, to breach the duty of fair representation, the union's actions must be outrageous or "so far outside a wide range of reasonableness as to be irrational." *Stanley v. AFSCME*, 165 Md. App. at 15 (internal quotations and alterations omitted).

In 2006, SP&P § 3-306 codified the duty of fair representation that state unions owe to state employees. In 2022, it said:

> (b) Employee organizations and their agents or representatives are prohibited from engaging in any unfair labor practice, including:
>
> ***
>
> (6) not fairly representing employees in collective bargaining or in any other matter in which the employee organization has the duty of fair representation.

SP&P § 3-306 (2022).

Since SP&P § 3-306 does not expressly abrogate common-law negligence,[29] we must determine whether the legislature intended to abrogate the common-law claim for negligence by implication. *Robinson*, 353 Md. at 694 ("It is a cardinal rule of statutory construction to give effect to the intent of the Legislature."). We conclude that the legislature has so occupied the field of fair representation claims that it has preempted related common-law negligence claims. In developing and eventually codifying the duty, the legislature sought to create a system for holding state unions and their representatives accountable, to the exclusion of remedies that may normally be available for common-law negligence.

Before moving further in our explanation, it is important at this point to distinguish between federal preemption of state law and statutory abrogation of common law. Many of the cases to which the parties cite discuss preemption of state law by federal law. While the ultimate issue in this case concerns the abrogation of common law by state statutory law, the federal preemption cases are still relevant. The concepts of federal preemption and abrogation of common law are analogous. A state law is preempted by a federal law when the federal law takes precedence over and thus replaces the state law. Similarly, common law is abrogated by state statutory law when a statute takes precedence over and thus replaces common law. Moreover, we have previously found that federal labor law may inform state labor law. *See Stanley v. AFSCME*, 165 Md. App. at 15-16 (using federal labor law cases to guide interpretation of the duty of fair

---

[29] Neither party contends that the statute expressly abrogates the common law.

31

representation). Likewise, here, federal labor cases concerning federal preemption are instructive on the mechanics of the Maryland statutory duty of fair representation and its relation to the common law. Thus, we turn now to the federal duty of fair representation and its impact on fair representation claims that are based on state statutes.

Generally, a federal duty of fair representation claim preempts a state claim "if the resolution of [the state] claim depends upon the meaning of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988). For example, the federal duty of fair representation preempted a state claim for negligence concerning mine inspections because the claim was not independent of the collective bargaining agreement. *Rawson*, 495 U.S. at 374-75. In that case, the U.S. Supreme Court explained, "[t]he doctrine of fair representation is an important check on the arbitrary exercise of union power, but it is a purposefully limited check, for a 'wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents.'" *Id.* at 374 (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). Later, the U.S. Supreme Court similarly held that a plaintiff employee's "state-law tort action that necessarily rests on an interpretation of [the] terms" of the collective bargaining agreement is preempted by the federal duty of fair representation. *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. at 859. The Court further clarified that state remedies are not "pre-empted where the activity regulated was a merely peripheral concern of the [federal duty of fair representation]." *Vaca*, 386 U.S. 171, 180 (1967) (internal quotations omitted).

32

Since then, lower federal courts have followed this doctrine in many cases. *See, e.g.*, *Chappell v. Int'l Bhd. of Elec. Workers Loc. Union 772*, 120 F. Supp. 3d 492 (D.S.C. 2015) (finding that plaintiff's negligence and breach of contract claims were preempted by the federal duty of fair representation); *Adkins v. Mireles*, 526 F.3d 531 (9th Cir. 2008) (ruling the federal duty of fair representation preempted union members' breach of contract claims); *Cahoon v. Int'l Bhd. of Elec. Workers Loc. 261*, 175 F. Supp. 2d 220 (D. Conn. 2001) (holding that claims for negligent hiring were preempted by the federal duty of fair representation). Thus, it is well-established that the federal duty of fair representation preempts state common-law claims when the act at issue is covered by the collective bargaining agreement.

Similarly, several state courts have held that statutory duty of fair representation claims abrogate common-law negligence claims that arise out of the union's representation. *See Killian v. Seattle Pub. Schs.*, 403 P.3d 58 (Wash. 2017) (en banc) (holding that claims arising out of the union's representation, like negligent and unauthorized practice of law, are "subsumed" in a duty of fair representation claim); *Brown v. Me. State Emps. Ass'n*, 690 A.2d 956 (Me. 1997) (holding a union attorney's failure to meet a filing deadline fell under the duty of fair representation, thereby precluding a negligence claim); *Best v. Rome*, 858 F. Supp 271 (D. Mass. 1994) (holding that the imposition of the duty of fair representation on unions precludes a remedy for negligence because a union must be afforded deference in their representation); *Weiner v. Beatty*, 116 P.3d 829 (Nev. 2005) (holding that the union lawyer's representation of the

33

plaintiff arose out of the collective bargaining agreement, that the union lawyer was therefore an agent of the union, and that the union lawyer was only subject to claims under the duty of fair representation and not under a malpractice theory); *cf. Grahame v. Rochester Tchrs. Ass'n*, 262 A.D.2d 963, 964 (S. Ct. N.Y. 1999) (holding that a negligent misrepresentation claim was not subsumed by the union's duty of fair representation because the collective bargaining agreement did not address the benefits at issue).

We conclude that like federal labor law, the field of state labor relations is so occupied by legislation that Maryland's General Assembly must have intended for the duty of fair representation to abrogate common-law negligence relating to a state union's representation of state employees. Therefore, when related to a state union's representation of state employees, a statutory fair representation claim abrogates a related common-law negligence claim.

The type of state statutory abrogation of common law relevant here is known as field preemption; field preemption occurs when a state statutory scheme is so comprehensive as to cover the whole field. *See, e.g.*, *Robinson v. State*, 353 Md. 683, 694-701 (1999) (holding that statutory assault abrogates common-law assault because the assault statute was meant to occupy the entire field). The Maryland General Assembly has completely occupied the field of state fair representation claims. The legislature created administrative agencies to help oversee this relationship. It even gave the SLRB the power to create new state unions. SP&P § 3-205 (2022). In addition to the administrative process, the legislature also provided for a judicial cause of action through

34

CJP § 5-120. Having a judicial cause of action in addition to the administrative framework occupies the field even more and protects state employees while maintaining deference to state unions' actions and decisions. That the statutes establishing the administrative and judicial causes of action for fair representation claims apply only to state unions further compels our result today: Maryland's General Assembly has a special interest in occupying labor relations when the state itself is the employer.

Our legislature also enumerated examples of unfair labor practices in which state unions are prohibited from engaging, including breaches of the duty of fair representation. SP&P § 3-306 (2022). Further, it is clear that mere negligence does not "'state a claim for breach of the duty of fair representation[.]'" *Stanley v. AFSCME*, 165 Md. App. at 15 (alterations in original) (quoting *Rawson*, 495 U.S. at 372-73). By explicitly establishing these prohibitions on union behavior, the legislature intended to make statutory claims for breach of the duty of fair representation the exclusive remedies, precluding claims for common-law negligence where the contested action or inaction relates to a state union's representation of employees.

Of course, our General Assembly did not intend for fair representation claims to abrogate all other claims against state unions. For obvious reasons, the scope of the legislature's intended abrogation must be limited to situations that relate to a state union's representation of employees: fair representation claims can only abrogate common-law negligence where the duty of fair representation applies in the first place. This limitation avoids the problem Mr. Cecil's counsel raised in arguments before the circuit court,

35

where a pedestrian slips and falls outside a union's headquarters. In that situation, a slip-and-fall would not be covered by the duty of fair representation, so the plaintiff could still sue for common-law negligence. Therefore, a claim that does not relate to a state union's representation of employees or only does so peripherally would not fall under the duty of fair representation, and so, common-law negligence claims in that case would not be abrogated.

Because abrogation (or not) depends on legislative intent, policy often provides further insight into a legislature's intended purpose in enacting a statute. *See Harris v. State*, 479 Md. 84, 109-10 (2022) (explaining that particular policy judgments support the court's conclusion that the statute at issue did not abrogate the common-law felony murder rule). Here, the policy behind the duty of fair representation provides context when considering the effects abrogation may have. *See Vaca*, 386 U.S. 171, 180 (1967) ("[T]he decision to pre-empt federal and state court jurisdiction over a given class of cases must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies of concurrent judicial and administrative remedies."). Thus, we next examine the policies behind the duty of fair representation to corroborate our conclusions above.

The policies and goals behind the duty of fair representation support our conclusion that the legislature intended to abrogate common-law negligence. A union is meant to protect workers, but within a union, there are often splits among members. A union gives workers the advantage of having a larger, unified voice, but in doing so,

some individual voices will lose out to others. As is inevitable in a collective bargaining process, certain decisions will benefit certain employees but harm others. To accomplish its job, a union must be able to make strategic decisions that may harm some employees for the benefit of the majority. *See* Archibald Cox, *The Duty of Fair Representation*, 2 Vill. L. Rev. 151, 151-52 (1957) (explaining that union representatives possess great power to arrange terms and conditions with which a majority of workers agree but which would bind both the majority and the minority).

Therefore, a union must be allowed deference in its actions so that it can make these strategic decisions. Otherwise, the union would not be able to function effectively. *See id.* at 167 ("Too strict judicial or administrative supervision through the concept of fair representation would impair the flexibility and adaptability of collective bargaining while substituting governmental decisions for self-determination."). Further, holding unions to a negligence standard, rather than the duty of fair representation standard, would put the costs on union members, discourage unions from representing their members, and allow interference with unions' decisions. *See DeGrio v. Am. Fed'n of Gov't Emps.*, 484 So. 2d 1, 3 (Fla. 1986) (recognizing that the federal duty of fair representation preempts common-law negligence and discussing the policy reasons behind the duty of fair representation).

However, the minority must also be protected from exploitation by the majority. *See Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 202 (1944) ("[T]he organization chosen to represent a craft is to represent all its members, the majority as well as the

minority[.]"). Thus, the union must owe even minority members some duty to fairly represent their interests, even if the union ultimately decides against those interests.[30] Creating the duty of fair representation, then, sought to balance the need to give unions deference in their decision-making and the need to protect employees in their representation by the union. "Freeing a union from liability for ordinary acts of negligence in the performance of its representational responsibilities requiring judgment on its part, reflects a balance of the union's organizational interest against the individual interests of its members." *Peterson v. Kennedy*, 771 F.2d 1244, 1255 (9th Cir. 1985). To obtain that necessary balance, the duty of fair representation sets both a floor and a ceiling on a union's duty to employees.

In light of this comprehensive scheme, allowing plaintiff employees to bring negligence claims in tandem with a claim for breach of the duty of fair representation would frustrate the policy goals of the duty of fair representation. As discussed, there are reasons for setting both a floor and a ceiling for a union representative's requisite

---

[30] Much of the law surrounding the duty of fair representation originates in cases of racial discrimination, where a union's white majority could bargain for higher pay, more promotions, and a stronger likelihood of retention than employees of color. *See Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 202 (1944) (reversing an agreement that discriminated against Black firefighters in favor of white firefighters); *Syres v. Oil Workers Int'l Union, Loc. No. 23*, 350 U.S. 892 (1955) (reversing and remanding where the majority white union negotiated more promotions and better pay for the company's predominantly white division compared to the company's predominantly Black division); *Bhd. of R.R. Trainmen v. Howard*, 343 U.S. 768 (1952) (finding that the collective bargaining agreement, which had been negotiated by the white employees' union had the effect of discriminating against Black employees). *See generally* Cox, *supra* at 152-58 (discussing multiple foundational duty of fair representation cases involving racial discrimination by a union's white majority).

standard of care. If the legislature were to allow a negligence claim to be brought alongside a claim for breach of the duty of fair representation, then unions would not have the deference needed to function effectively. *See Killian*, 403 P.3d at 64 (citing *Peterson*, 771 F.2d at 1255) ("[N]egligence is the essence of a malpractice action, but negligence is insufficient to support a breach of [the duty of fair representation]. Thus, certain union employees—namely, attorneys—would be held to a higher standard than the union itself."). The legislature cannot have intended such a result but must have intended for the statutory language to preempt the entire field.

Turning to the present case, both parties agree that the duty of fair representation covers the situation out of which Mr. Cecil's claims arose. In fact, Mr. Cecil asserts essentially the same facts to support both his fair representation claim and his negligence claim, further supporting that his negligence claim relies on the Union's duty to Mr. Cecil. Because Mr. Cecil's negligence claim is not independent of the Union's representation of him, his negligence claim is abrogated by his statutory fair representation claim. *See Brown*, 690 A.2d at 957, 960 (holding that the plaintiff's duty of fair representation claim preempted his negligence claim when the claim was based on a union lawyer's failure to timely file a request to move forward). Because Mr. Cecil's claim is already covered by the duty of fair representation, his claim for negligence is abrogated, and it must be dismissed. We affirm the judgment of the circuit court dismissing that claim.

### III. TIMELINESS AND 28 U.S.C. § 1367(D) TOLLING

**a. Parties' Contentions**

Mr. Cecil argues that the circuit court was incorrect in finding his fair representation claim was ultimately untimely. He begins by contending that the court was correct that his cause of action began to accrue on December 22, 2021, so his original federal complaint was timely. However, Mr. Cecil contends that the circuit court erred in finding that his amended federal complaint did not relate back to his original federal complaint.[31] Mr. Cecil claims that while he did not reference the Maryland statute for fair representation claims until his amended complaint (and thus, outside the statute of limitations), his amended complaint merely clarified his original complaint. Because he was only clarifying his original complaint, he argues the circuit court should have used the filing date of his original federal complaint to determine the timeliness of his circuit court fair representation claim.

Conversely, the Union contends that the circuit court was correct in finding Mr. Cecil's fair representation claim was untimely because his amended federal complaint does not relate back to his original complaint. The Union claims that for a state court to conclude that a state limitations period is tolled by § 1367(d), a plaintiff must have *expressly* asserted the state claim in federal court within the statute of limitations. The Union maintains that Mr. Cecil's singular fair representation claim in his original federal

---

[31] Mr. Cecil also raised other reasons why he believes the circuit court erred in finding his claim untimely. Given our analysis here, we do not reach these other arguments.

complaint implicitly referred to a federal claim, rather than a state claim. The Union notes

that Mr. Cecil did not expressly assert his state claim or even mention state law until his

amended federal complaint. According to the Union, because asserting his state claim in

the amended federal complaint added a claim rather than simply clarifying one, Mr.

Cecil's amended federal complaint cannot relate back to the original federal complaint.

Because it cannot relate back to the original complaint, the Union asserts, the state claim

should be treated as being filed outside the statute of limitations.

### b. Mr. Cecil's Complaint Was Not Timely Because The Amended Complaint Did Not Relate Back For Purposes Of 28 U.S.C. § 1367(d) Tolling.

28 U.S.C. § 1367(d) states:

> The period of limitations for any claim asserted under subsection (a),[32] and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

(footnote added). Section 1367(d) tolls Maryland's statutory limitations periods for

claims "(i) that are brought in a U.S. District Court, (ii) that are within the 'supplemental

jurisdiction' of that court, but (iii) over which the court eventually declines to exercise

jurisdiction." *Turner v. Kight*, 406 Md. 167, 169 (2008). Section 1367(d) thus tolls a state

statute of limitations while a federal case is pending so that a federal court does not have

to worry about the possible inequitable consequences of state limitations law when

---

[32] Subsection (a) provides federal district courts with supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

deciding whether to dismiss a case. *See* John B. Oakley, *Prospectus for the American Law Institute's Federal Judicial Code Revision Project*, 31 U.C. Davis L. Rev. 855, 945 (1998) (discussing § 1367(d)'s intricacies and Congress's intent in enacting it).

The complexities of § 1367(d) have spawned many cases, but we need not concern ourselves with those complexities here. We affirm the dismissal of Mr. Cecil's fair representation claim because his amended federal complaint did not relate back to his original federal complaint under Maryland's established procedure for concluding when state-law claims are tolled by § 1367(d). *See Rounds v. Md.-Nat. Cap. Park & Plan. Comm'n*, 441 Md. 621, 659-62 (2015) (choosing to follow *In re Vertrue Mktg. & Sales Pracs. Litig.*, 712 F. Supp. 2d 703, 721 (N.D. Ohio 2010), *aff'd*, 719 F.3d 474 (6th Cir. 2013)).

To determine when Mr. Cecil's limitations period ran out, we must first determine when it began to run. CJP § 5-120(b) provides that a fair representation claim begins to run upon "the **later** of: (1) The date on which the claim accrued; **or** (2) The date on which the complainant knew or should reasonably have known of the breach." (emphasis added).

We agree with the circuit court that Mr. Cecil's cause of action accrued on December 22, 2021. The deadline for the Union to file Mr. Cecil's appeal was September 15, 2021. The OAH dismissed the appeal on December 22, 2021. The Union contends that Mr. Cecil must have known of the Union's failure to timely file before the OAH dismissed the appeal. The Union reasons that for the OAH to dismiss the appeal,

someone must have filed a motion because the OAH is not allowed to dismiss cases *sua sponte*. *See* COMAR 28.02.01.12(C).[33] However, CJP § 5-120 provides that limitations begins to run upon the occurrence of the *later* option: when Mr. Cecil's claim actually accrued or when Mr. Cecil knew or should reasonably have known of the Union's breach of the duty of fair representation. *See* CJP § 5-120(b). Regardless of when Mr. Cecil knew or should reasonably have known of the Union's breach, his fair representation claim did not accrue until the OAH dismissed his appeal because, until that point, he had not been injured by the Union's alleged inaction. Therefore, we agree with the circuit court that Mr. Cecil's fair representation claim accrued on December 22, 2021, and expired on June 22, 2022.

Because he filed his original federal complaint on June 17, 2022, that complaint was within the limitations period and was timely brought. However, Mr. Cecil only amended his federal complaint to cite the state statute for breach of the duty of fair representation on July 26, 2022. If Mr. Cecil's state claim in his amended federal complaint related back to his original federal complaint for tolling purposes, then it, too, would qualify as having been brought within the limitations period. But, if Mr. Cecil's state claim in his amended federal complaint did not relate back to his original federal complaint for tolling purposes, then it was brought outside the limitations period because it was filed on July 26.

---

[33] COMAR 28.02.01.12(C) says, "Upon motion, the ALJ may issue a proposed or final decision dismissing an initial pleading that fails to state a claim for which relief may be granted."

To determine whether a claim relates back to an original complaint for purposes of tolling, we follow the standard set forth in *Rounds v. Maryland-National Capital Park and Planning Commission*, 441 Md. at 661. The plaintiffs in *Rounds* asserted several claims against the Maryland-National Capital Park and Planning Commission, alleging that the Commission failed to issue home addresses to the plaintiffs. *Id.* at 632-33. Although the plaintiffs originally brought their complaint in federal court, it was eventually dismissed, and the plaintiffs attempted to reassert it in the Circuit Court for Montgomery County. *Id.* at 633-34. When the plaintiffs brought suit in the circuit court, they added a count of wrongful elimination of easement rights. *Id.* at 634. Our Supreme Court, affirming the circuit court, held that § 1367(d) did not toll the limitations period on plaintiffs' claim for wrongful elimination of easement rights because that claim was not included in plaintiffs' initial federal complaint. *Id.* at 661-62.

Under *Rounds*, to take advantage of § 1367(d) tolling, a plaintiff must expressly assert their state-law claim in their original federal complaint, filed within the state statute of limitations. *Id.* at 661. If the plaintiff does not raise their state-law claim until after the state statute of limitations has run, they cannot raise it in state court. *Id.* Doing so would allow a plaintiff to disregard the statute of limitations and resurrect a time-barred claim.

In the case of a federal complaint that is amended after the state statute of limitations has passed, the *Rounds* court established a test. *Id.* If the amended complaint is simply clarifying what was in the original complaint, then the court considers the state

44

claim expressly and timely asserted. *Id.* However, if the amended complaint raises a completely new cause of action, then the court considers the claim time-barred. *Id.*

The *Rounds* court distinguished the case from *Estate of Belden v. Brown County*, 261 P.3d 943 (Ct. App. Kan. 2011). In that case, the plaintiffs had not specifically stated the phrases "respondeat superior" or "vicarious liability" in their initial federal complaint. *Id.* at 975. But otherwise, the plaintiffs' complaint put the defendants on notice that their claim rested on vicarious liability because the plaintiffs had asserted in their initial federal complaint that the defendants were acting in the scope of their employment. *Id.* Because the defendants were on notice of the vicarious liability theory, the Court of Appeals of Kansas allowed the plaintiffs' claim to go forward. *Id.* The Supreme Court of Maryland distinguished the *Rounds* case from *Estate of Belden* by explaining that the plaintiffs in *Estate of Belden* had simply refined their claim from their initial federal complaint. *Rounds*, 441 Md. at 661. Conversely, the plaintiffs in *Rounds* had added a new cause of action. *Id.*

Here, Mr. Cecil's state-law claim did not relate back to his original federal complaint for purposes of 28 U.S.C. § 1367(d). Mr. Cecil's original federal complaint only contained one count of breach of the duty of fair representation. Mr. Cecil's original complaint did not state anything about supplemental jurisdiction. Nor did it refer to any specific state laws. The only statute the original complaint mentioned was 29 U.S.C. § 185, which Mr. Cecil claimed established subject matter jurisdiction, i.e., federal question

jurisdiction.[34] Since Mr. Cecil asserted no other counts in his original complaint, his claim in his original complaint must have been based on federal law. The federal court could not have exercised supplemental jurisdiction over the one and only count in Mr. Cecil's original complaint because at that point there was nothing to which the one count could be supplemental.

In his amended complaint, Mr. Cecil did not merely clarify the federal-law fair representation claim that was the basis for his original complaint. Instead, he added a second count, this one based on state law, for breach of the state-law duty of fair representation. Both the original and amended complaints cited the federal statute, 29 U.S.C. § 185, for Mr. Cecil's federal fair representation claim. But the original and amended complaints differed in that the amended complaint added a state-law claim and another basis for jurisdiction over that state claim. The amended complaint also explained that AFSCME was a labor organization under state law. All of this is to say that in adding the second count, a count that sounded in a separate body of non-federal law, and that depended on supplemental (i.e., non-federal question) jurisdiction, Mr. Cecil's state claim was not a clarification of the claim in his original complaint. It was an addition. *See In re Vertrue Mktg. & Sales Pracs. Litig.*, 712 F. Supp. 2d at 722 ("To read the statute as broadly as plaintiffs suggest would lead to the illogical result in which a plaintiff could file a complaint in federal court containing only a federal cause of action. In the event the court disposed of the federal cause of action, the plaintiff could file an untimely

---

[34] No one contends that the basis for federal jurisdiction was diversity.

complaint in state court containing a state-law cause of action 'arising' from the facts asserted in the federal complaint. This would be so even though the plaintiff asserted no state[-]law cause of action in the federal complaint.").

Mr. Cecil argues that his amended complaint was simply refining his original duty of fair representation claim by splitting it into a federal claim and a state claim. To be sure, we generally do not require a complaint to be pled with specificity. Md. Rule 2-303(b).[35] However, there is no indication that Mr. Cecil's original federal complaint included a state claim because he did not cite any state statutes or assert supplemental jurisdiction. *See Rounds*, 441 Md. at 661 (finding the plaintiffs did not expressly assert their state claims in their original federal complaint).

Therefore, we affirm the circuit court's dismissal of Mr. Cecil's claim for breach of the duty of fair representation due to lack of timeliness.

## CONCLUSION

Mr. Cecil need not have exhausted his administrative remedies before bringing this action. However, his negligence claim was abrogated. His fair representation claim was untimely. Thus, we affirm the circuit court's dismissal of Mr. Cecil's complaint.

---

[35] Maryland Rule 2-303(b) sets forth the requirements for a pleading in a Maryland circuit court:

> Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings are required. A pleading shall contain only such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense. It shall not include argument, unnecessary recitals of law, evidence, or documents, or any immaterial, impertinent, or scandalous matter.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**